## S. DEXTER LUDDEN

· v.

## THE BUFFALO BATTING COMPANY.

*Factors—No Right to Pledge Goods—Trover Lies against Pledgee—*
*Nature of Action—Recoupment.*

1. Although a factor having a lien on goods for advances or for a general
balance can not pledge the goods, he may deliver them to a third per-
son for his own security, with notice of his lien, as his agent to keep
possession for him. Such change does not divest the factor of his right, for
it is in effect a continuance of his possession.

2. · A factor having a lien on goods for advances and freight can not. merely by notifying the pledgee that he has made advances on the goods, pledge them for a loan to himself for an amount greater than his advances, and invest the pledgee thereby with his lien to the extent of such advances.

3. The pledgee deals with the factor at his peril, and if in fact the circumstances of the pledge constitute it a conversion of the goods, it is tortious, and the receipt by him of the goods is a conversion of them.

4. In an action of trover against the pledgee of certain goods pledged to him by a factor, it is *held:* That trover being an equitable action, the plaintiff can recover damages only to the extent of the injury actually sustained; and that the pledgee may recoup, from the value of the goods pledged to him, the amount of the factor's advances thereon.

[Opinion filed April 26, 1887.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Statement by MORAN, J. This was an action of trover against appellant brought by appellee to recover the value of 180 cases and 100 bales of cotton bats. The bats were shipped by appellee to Fowler & Co. for sale on commission in regular course of trade. Fowler & Co. advanced to appellee on the goods $1,200 and paid for freight on them $79.20. The bats were stored in appellant's warehouse. Prior to their being stored there appellant had loaned to Fowler & Co. some $3,500 on other goods which were in storage in his warehouse, and after the bats were placed in the warehouse appellant advanced to Fowler & Co., upon them, $1,000 in money, and upon the credit of them released to Fowler & Co. other goods which had been pledged, to the amount of about $700. Appellant claimed to have loaned upon the bats in all about $1,700. Fowler & Co. gave a written memorandum to appellant, containing, among other things, statements to the effect that they had advanced on the bats to the extent of 75 per cent. of their value. Shortly after pledging the bats to appellant, Fowler & Co. failed and left the State, leaving no assets.

The case was submitted to the court for trial, a jury being waived, and after the evidence was closed the following propositions of law, numbered third and fourth, were submitted to the court by appellant to be held.

Ludden v. Buffalo Batting Co.

Third: " Where a factor has a lien upon goods for an advance made to his principal or for charges paid by him on such goods, he has such an interest in the property that he may pledge the same to another person to the extent of such lien and without impairing the factor's lien or giving the owner of the goods a right to reclaim the same on any other terms than he could have done had the factor not pledged the goods."

Fourth: "Where a factor has a lien upon the goods intrusted to him and he pledges the same in good faith, and the owner sues the factor's pledgee for the value of the goods, the amount sought to be recovered by such suit must be reduced by the sum due to the factor from the plaintiff for advances made by such factor to the plaintiff or for proper charges incurred by the factor on account of the goods to the extent of the charges which the plaintiff should have paid This rule is applicable to this suit."

The court refused to hold said propositions and found for the plaintiff, assessing damages for appellant for $2,000, being the amount the bats came to at their market value and without making any deduction for money advanced or freight paid by Fowler & Co.

Appellant excepted to the ruling of the court and to the finding, and from the judgment of the court entered thereon this appeal is prosecuted to this court.

Mr. FRANK J. CRAWFORD, for appellant.

A factor can, without doubt, deliver over the actual possession of the goods to a third person, with notice of his lien, in which case the lien will be kept alive and may be used as security for a third person.    Silverman v. Bush, 16 Ill. App. 437; McComber v. Davis, 7 East, 7; Urquhart v. McIvor, 4 Johns. 103; Story on Bailm., Sec. 327; Donald v. Suckling, L. R., 1 Q. B. 585.

It is well established that a pledge is good to the extent of the pledgor's interest in the property.

In Belden v. Perkins, 78 Ill. 449, it is held that " where

property is pledged, the pledgee acquires a special property therein, and he may transfer the same without impairing the original lien thereon, or giving the owner a right to reclaim it on any other or better terms than he could have done before such transfer."

Mr. FRANK BAKER, for appellee.

That the factor has a lien for the amount of his advances is true.   That he may deliver the goods so consigned to him to a third person to hold for him with a notice of his lien, without waiving his lien, we also concede.   But the factor can not pledge the goods of his principal.   The authority is to sell, not to pledge.   A pledge by a factor is therefore a tortious act, and the lien of the factor can not by such tortious act be transferred.   This rule has been strictly adhered to since it was established in Patterson v. Tash, 2 Strange, 1178.

Upon the facts in this case it is clear that the character of the transaction between Fowler & Co. and appellant was a deposit by way of pledge, not a mere delivery of goods with notice of lien.   Such a deposit was held wrongful and tortious in Gray v. Agnew, 95 Ill. 315.

MORAN, J.   Fowler & Co. undoubtedly had a lien on the goods consigned to them by appellee to the extent of the $1,200 advanced by them to appellee upon the goods.   The third proposition presented to the court to be held, and claimed to be applicable to the facts in the case, is that a factor having such a lien for advances has such an interest in the property, that he may pledge the same to another to the extent of such lien, without impairing the lien or giving to the owner of the goods a right to reclaim them on any better terms than he could have done had the factor not pledged the goods.

It is a well settled doctrine of the common law, that a factor having a lien on goods for advances, or for a general balance, has no right to pledge the goods, and if he does pledge them he conveys no title to the pledgee.   Story on Bailment, Sec. 325.

But though the factor can not pledge the goods of his

principal as his own, he may deliver them to a third person for his own security with notice of his lien, and as his agent to keep possession for him; and such change of the lien does not divest the factor of his right, for it is in effect a continuance of the factor's possession.   2 Kent's Com. 626.

In Silverman v. Bush, 16 Ill. App. 437, the doctrine was thus stated by Mr. Justice McAllister :  "If Crain [the factor] gave Silverman [the pledgee] notice of his lien, and merely placed the goods in his possession to hold to the extent of that lien, and as a substitute for him [Crain], we are of opinion that such transfer or change of lien was lawful, and Crain's right was not thereby divested."  And in Urquhart v. McIvor, 4 Johns. 102, Kent, C. J., laid stress upon the fact, that it was understood and declared by both the pledgor and pledgee to be a mere deposit of the lien upon behalf of the defendants in the hands of their agent to hold for them, and to surrender to the plaintiff the formal possession on his giving to the defendants their just indemnity.   There was no tortious conversion about such change of the lien.   In McComber v. Davis, 7 East, 11, the language of Lord Ellenborough is : "That whether or not a lien might follow goods in the hands of a third person to whom it was delivered over by the party having the lien, purporting to transfer his right of lien to the other as his servant and in his name, and as a continuance in effect of his own possession, yet it was quite clear that a lien could not be transferred by the tortious act of a broker pledging the goods of his principal, which he had no authority to do."  We do not understand that a factor having a lien on goods in his possession for advances made by him can, by merely notifying the pledgee that he has made advances on the goods, pledge them for a loan to himself for an amount greater than his advances, and invest the pledgee thereby with the factor's lien, to the extent of the factor's advances. If the factor falsely states to the pledgee the amount of his advances, and obtains by that means a loan for more than the advance, pledging the goods for it, he has certainly been guilty of a tortious act, and has thereby converted the goods to his own use.   The pledgee deals with the factor at his peril, and

if in fact the circumstances of the pledge constitute it a conversion of the goods, no matter that the pledgee is innocent and has been imposed upon, the pledge is tortious and the receipt by him of the goods is a conversion of them.

In this case the evidence showed that while Fowler & Co. did not pledge the goods as their own they falsely stated that they had advanced on the goods to the extent of 75 per cent. of their value, and, as appellant claims, obtained on the credit of them $1,700, when in fact their advance and lien was only to the amount of $1,200. Indeed, it may well be inferred from the evidence, that the actual transaction was a special pledge of a portion of these bats for the sum of $1,000 and a general pledge of the remainder of them in exchange for the goods of other consignors which were withdrawn from the possession of appellant as collateral security for a loan of $3,500 which had been made prior to the receipt by Fowler & Co. of any of the bats. We think that such transactions were a conversion of the goods, and it follows that the factor's lien for advances and for freight paid, did not pass to appellant in such manner as that he could hold the goods until a tender of the amount advanced was made. By the act of conversion the lien was determined, and after the conversion trover could be maintained by the owner against the factor, without any tender of the advances or any demand for the goods, and the pledgee can not be in any better position in that respect than his pledgor. Therefore, if it be assumed that the third proposition is law, which question we do not intend to decide, still it was properly refused by the court as it was not applicable to the facts as shown by the evidence in the case. Instead of pledging the goods to the extent of his lien the factor falsely stated the extent of his advances, and pledged the goods for a sum much in excess of the amount for which he had a lien upon them.

This brings us to the consideration of the fourth proposition. Story says, in his work on Bailments, Sec. 326, that while the doctrine that the factor can not pledge the goods of his principal is recognized in this country, it has not as yet been carried to the extent of deeming the pledge altogether a

Ludden v. Buffalo Batting Co.

tortious proceeding, "so that the principal may maintain an action against the pledgee without discharging the lien, or *at least without giving the pledgee a right to recoup the amount of the lien in the damages."* The latter proposition is, in our opinion, the one best sustained by authority. It is true that in a note to this section, the editor states the rule as drawn by him from the "later decisions" to be contrary to that stated by the learned author, but the cases cited by the editor wholly fail to sustain his position. It is not inconsistent to say that while the principal may maintain trover against the factor's pledgee for the goods converted, yet the damages shall be reduced by any advances or payments by the factor made upon the goods. Trover is an equitable action, and the rule frequently upheld is, that the plaintiff can recover damages only to the extent of the injury actually sustained. Thus if the mortgagee bring trover against the mortgagor he can recover only the amount of the debt, and where an executor *de son tort* is sued in trover by the rightful administrator, he may show in mitigation of damages that he paid debts which the administrator would be bound to pay, and if such payments equal the value of the property converted, the administrator will recover only nominal damages. 1 Williams on Executors, 144. If the action in this case was against the factor it would not be questioned but that the amount advanced by him upon the goods might be recouped from the value of the goods which the plaintiff would be entitled to recover. This has been frequently done in actions brought to recover from a pledgee. Javis v. Rogers, 15 Mass. 389; Stearns v. Marsh, 4 Denio, 227; Story on Bailments, Sec. 349, and case cited. The right to recoup does not rest upon the principle of lien. It exists after the lien has been destroyed by a tortious act of the party in whose favor it originally obtained, the sole object of the law in awarding damages to a plaintiff being to compensate him for the injury he has suffered from the wrongful act of the defendant. The tortious pledge of the goods by the factor is not, in form, an assignment to the pledgee of the factor's claim against the principal for advances, but it certainly operates to transfer as

between the factor and the pledgee, all rights which exist to have damages for the tortious act mitigated as against the principal.

This doctrine was applied by our Supreme Court in the case of Belden v. Perkins, 78 Ill. 449. There Perkins pledged certain corn to one Patterson to secure a debt. By the terms of the contract under which the corn was pledged, Perkins was entitled to determine the time when the corn should be sold, but Patterson sold the corn to Belden without notice to, or the consent of Perkins. Belden, in his turn, sold the corn and received the money for it, and Perkins sued Belden for money had and received, and recovered judgment for the whole value of the corn without any deduction for the debt for which it was pledged. The Supreme Court reversed the case on the ground that if Patterson had converted the corn into money and the action had been against him, he would have been entitled to recoup the debt due him, and saying: "If then, the pledgor could not recover the value of the property from the pledgee without the payment of the debt for which the property was pledged, does not the same principle apply in an action against the vendee of the pledgee?" There was in that case no formal assignment of the debt to the purchaser of the corn, yet the court held that Belden, the vendee of the pledgee Patterson, might recoup the amount of the debt due Patterson from Perkins, against Perkins' cause of action. That was an action for money had and received, but no doubt trover could have been maintained, and no reason occurs to us why the same measure of damages would not have obtained in such action, for trover and money had and received are both equitable actions. The same rule in substance was applied by the court in Tripp v. Grouner, 60 Ill. 474. There, goods had been distrained for rent, and were sold by the Constable without having been appraised as the law required. The owner of the goods brought trover against the Constable for the conversion of the goods, and the Supreme Court held that the action could be maintained, but that the amount which the defendant had paid upon the plaintiff's rent should be deducted or applied in mitigation of damages. Nor is there wanting very

Ludden v. Buffalo Batting Co.

respectable authority directly in point. The First National Bank of Louisville v. Boyce, 78 Ky. 42, so far as the question now under consideration is concerned, is not to be distinguished from the case at bar. There a lot of bagging was shipped by a manufacturer to a firm of commission merchants to be sold on his account and the proceeds remitted. The factors advanced upon the goods, and having placed some of them in a warehouse, took warehouse receipts which they pledged as their own to secure a loan made by the bank for an amount in excess of the advance. The principal brought an action under the code against the bank for the value of the bagging, and the bank answered, setting up the insolvency of the factors, and claiming to set off, against the value of the goods, the amount which the factors had advanced on them to the owner. A demurrer was sustained to the answer, and on appeal the Supreme Court reversed the case, after a very full review of authorities, taking the ground that such equitable defense must be clearly admissible under the code, as the manifest equity and justice of the cases had carried the doctrine so far at common law " that equitable defense by way of recoupment or equitable set-off has been entertained and made effectual in actions of trover. While saying the factor had no right to pledge the goods of his principal, the court have with great unanimity allowed the amount sought to be recovered of the innocent pledgee of the factor to be reduced by sums justly due from the principal to his factor. Wherever the action sounds in damages, the plaintiff is restricted in his recovery to the damages actually sustained."

We are of opinion, therefore, in view of the foregoing authorities, that appellant was entitled to recoup from the value of the goods pledged to him, the amount which Fowler & Co. had advanced to appellee upon the goods, as well as the amount of freight paid by them for the goods at the time they were received by them. The court should have held the fourth proposition of law and should have deducted from the appellee's recovery, the money shown to have been advanced to appellee and the freight charges paid by the factor, and for the error in that regard, the judgment must be reversed and the cause remanded.              *Reversed and remanded.*