### Daniel M. Smoot v. Consolidated Coal Company of St. Louis.

1. MINERAL—*effect of conveyance of.* The conveyance of coal in place, beneath the surface, operates to create a distinct and separate estate in the grantee, entirely independent of the rights of the owner of the surface; and where the conveyance of such coal is made, by necessary implication there is reserved to the grantor the right and title to all and every other estate in such land, including the estate and rights in such land with respect to other minerals.

2. TROVER—*when, lies.* Trover will lie for the wrongful conversion of mineral separated from the earth by artificial causes.

3. TROVER—*when, does not lie.* Trover is not an appropriate action to recover the value of mineral upon deposit in the earth.

4. MEASURE OF DAMAGES—*in action for wrongful conversion of mineral.* Where a defendant under a grant from the plaintiff has removed certain coal, and in removing such coal has necessarily, likewise, removed what is known as "iron pyrites," the measure of damages in

an action for the conversion of such iron pyrites is the value of the coal at the mouth of the pit, less the cost of the digging of such iron pyrites and of separating it from merchantable coal.

Action of trover. Appeal from the Circuit Court of Vermilion County; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this court at the May term, 1903. Reversed and remanded. Opinion filed June 28, 1904.

LAWRENCE & LAWRENCE, for appellant.

H. M. STEELY, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

On April 14, 1893, appellant and wife, in consideration of $935, by their warranty deed, conveyed to appellee, " all the coal in, under and throughout " a tract of land containing 129 acres, situate in Vermilion county, " with the right to mine and remove the same and the right to maintain tramways " under ground for the purpose of mining and removing any other coal said grantee now owns or may hereafter acquire." For several years prior to this conveyance appellee had been operating a coal mine on lands lying immediately south of appellant's land, and did not enter appellant's land for the purpose of mining until November, 1900. The veins of coal in the so-called Danville district, in which is appellant's land, carry in considerable quantities, a mineral known as " sulphur rock " or " iron pyrites," which is severed from the soil in the usual course of mining for coal, and which, prior to 1901, was treated as refuse or waste and thrown on the gob. Invention having opened a market for this hitherto waste mineral in the manufacture of sulphuric acid, vitriol, alum and sulphur, appellee in the operation of its mine on appellant's land and the land adjacent, saved and sold the same to the amount of 2,493,500 pounds, prior to September 24, 1902, at a gross price per ton of $2.75 f. o. b. Fairmount; of which amount thirty-two per cent has been mined and sold from the vein of coal lying within appellant's land.

This is a suit in trover by appellant against appellee to recover the value of the iron pyrites mined from the land of appellant, and which the declaration alleges appellee wrongfully converted to its own use. To the declaration in the usual form, appellee pleaded the general issue, and the cause proceeded to trial before a jury. At the close of all the evidence, the court, on motion of appellee, instructed the jury to return a verdict finding the defendant not guilty, and upon the return of such verdict, after overruling a motion for a new trial, rendered judgment against plaintiff for costs.

The conveyance of coal in place, beneath the surface, operates to create a distinct and separate estate in the grantee, entirely independent of the estate and rights of the owner of the surface. Catlin Coal Co. v. Lloyd, 176 Ill. 275. So the owner of the entire estate in a tract of land containing several distinct and separate minerals, may by apt conveyances, vest in each of several grantees, distinct and separate estates in the tract. The language of the deed in question leaves no room for a construction. It created in appellee an estate in the coal only, as a distinct and separate entity, in the tract of land described, and by necessary implication reserved to appellant the title and right to all and every other estate therein.

Coal, although the product of vegetable deposit, is called by geologists, a mineral, while pyrites of iron is, in its essence, a mineral, chemically separate and distinct from coal.

The evidence tends to show that traces of pyrites of iron exist in all bituminous coal; that when intermingled with the coal in any considerable quantity, it renders the coal unmerchantable, the iron forming an excess of clinkers in the grate, and in the process of combustion, eating out the grate bars; that the vein of coal in the tract of land described in the deed, is approximately five and one-half feet in thickness; that the pyrites of iron appears in the vein in two bands or sheets and also in irregular lump formations; that the lower band or sheet varying in thickness from one

inch to that of a sheet of paper is usually found about six to fifteen inches above the bottom of the coal in the vein and the other band or sheet, somewhat thicker than the first, is found immediately below the top layer of coal in the vein. In the operation of the mine, the miners are paid for the iron pyrites mined, at the rate of forty-nine cents per ton, the same rate per ton as for coal mined, and are required to separate it from the coal. The coal and iron pyrites are then put in separate cars and hoisted to the surface, the miners being docked in case the car of coal contains an excessive amount of the iron pyrites. After being hoisted to the surface the coal and iron pyrites are again examined and any excess of iron pyrites found intermingled in the coal is removed, as is also any coal found intermingled with the iron pyrites. Prior to the time appellee found a market for the iron pyrites, it was, after being separated from the coal in the mine, thrown in the gob or deposited in the worked-out rooms, as refuse or waste, and was also treated as waste when separated from the coal on the surface.

It is claimed by appellee that as the iron pyrites is found in the vein of coal, more or less intermingled with the coal, and necessarily removed from its place in deposit in the operation of mining the coal, it acquired title to it, by the grant of the coal in the deed, as an appurtenant or necessary incident. Coal and iron pyrites are, as has been stated, separate and distinct in their essence, and like other minerals in deposit, are, in legal contemplation, the land itself. Kamphouse v. Gaffner, 73 Ill. 453. If the deed to appellee had granted the iron pyrites in the tract of land described, it would hardly be contended that it passed title to the coal also. Each of the two metals, being in legal contemplation, land, neither would pass by grant of one, as appurtenant to the other, unless particularly designated. St. Louis Bridge Co. v. Curtis, 103 Ill. 410. If, however, the iron pyrites could be properly said to be an appurtenant to the coal, it would pass as such, notwithstanding the word " appurtenant " or similar expression, is not con-

tained in the deed.  Jarvis v. Seele Milling Co., 173 Ill. 192.

The question at issue is not determinable by the fact that the coal in the vein constitutes much the larger bulk, nor by the fact that the merchantable coal has intermingled with it pyrites of iron, which can only be eliminated by chemical processes.  We are concerned with substantial and not abstract rights.  Appellant in this case claims only the pyrites of iron separated from the coal, the quantity of which, so separated and converted by appellee, is not in dispute.

We are referred by counsel for appellee to the case of Lillibridge v. Lackawanna Coal Co., 143 Pa. St. 293, as one of controlling authority in this case.  In that case appellant had conveyed to appellee all the merchantable coal under certain lands.  Appellee having mined out the coal, undertook to use the space which the coal had occupied as a passage or tramway for the removal of coal from land adjacent, and appellant sought to enjoin such use. The court held that the chamber or passage formed by mining coal was the property of the owner of the coal; and where the ownership of the surface had been severed from the ownership of the coal, the owner of the surface could not restrain the owner of the coal from making such use of the chamber or passage, as he might see fit, so long as such use did not injure the former; that the right to such chamber was exclusively in the owner of the coal, and could not be questioned by the owner of the surface.

Upon the authority of this case, it is insisted that the conveyance by appellant of all the coal in the land described, vested in appellee the title to the space occupied by the vein of coal, together with all and every substance that was contained in that space.  If we were disposed to follow the case where a like question was involved, it is readily distinguishable from the case at bar.  The title to minerals in deposit other than coal, not granted by the deed, and occupying a portion of the space mined, was not involved and it cannot be considered as authority upon the question of

the title to such other minerals or the exclusive right to use such a space. In Sholl v. German Coal Co., 139 Ill. 21, it was held that a clause in a deed or contract conferring the privilege of mining for coal under a certain acre tract, can mean nothing more or less than that the right is conferred to enter into the tract named and remove the coal, but when the coal is all removed, the right conferred will cease to exist.

Upon the question of the right of a lessee or grantee to minerals not enumerated in the lease or deed, it is said in Barringer & Adams on the law of Mines and Mining, page 130.: " It seems clear that when one or more minerals are mentioned in the lease, the lessee will be confined to the extraction of these alone, and if in the course of mining he extracts others, he will be held liable to compensation and an account for their value to the lessor, and will be enjoined from further removal of them. This is true whether the unenumerated minerals escape by reason of their own force (as is frequently the case, when, in boring for oil, natural gas rises to the surface and is appropriated), or are purposely or accidentally removed by the labor of the lessee."

Counsel for both parties predicate a claim to the iron pyrites on the fact that at the time of the grant it was considered to be refuse and waste.

If it still retained that character, no litigation would have arisen as neither party would be concerned in the disposition of a worthless thing. In Erwin's Ap., 20 W. N. C. 278, a contract was made for the exclusive right to all the iron ore on a certain tract of land, with the right to wash on said premises such ore as should require washing, a certain royalty per ton to be paid for each ton of clear merchantable iron ore taken. For some time the refuse from the washing of the ore was allowed to accumulate in a dam, being considered of no value. Its utility for the manufacture of paint having been discovered, the lessee proposed to remove it, and the lessor filed a bill to restrain such removal. The testimony of experts and others was

that while containing iron ore, and so classified by scientists, this refuse matter was commercially known as ochre. *Held*, that the iron ore intended by the contract was the iron ore at that time mined with a well-known use and application, and that the crude ochre, in the dam, did not pass under the terms of the lease.

In Doster v. Friedensville Zinc Co., 140 Pa. St. 147, a lease was granted "for the purpose of searching for minerals and fossil substances, and conducting mining and quarrying operations to any extent he might deem advisable," the lessee to pay forty cents per ton "for all zinc ores, sulphurets of zinc, and iron ores," and to have the right to separate clear sulphuret ores from the rock, and pay only for the clean ore; and in case any other zinc ores were removed, they were to be paid for at the same rate. In the process of extracting the ore, the rock was crushed and washed, and the refuse, which contained seven and a half per cent of zinc ore, was treated as waste. Subsequently it was discovered that this mineral was valuable in the manufacture of paving blocks. It was held to be the property of the lessor, and the lessee having sold it had to account for its price, and was enjoined from further removal of it. The purpose of the lease was concerning ores only.

Upon principle and authority we must hold that the deed to appellee did not pass title to the iron pyrites separated from the coal, in order to make the latter merchantable, but that the title thereto was in appellant.

It does not clearly appear from the evidence, whether, when the coal is removed from its place of deposit, the bands or sheets of iron pyrites in the coal vein, are, in the main, found adhering to the coal, or whether in the operation of mining by blasting in the vein, the larger proportion of the two minerals are dislodged separately; but in any event the work of separating the two with pick or hammer is a simple matter, and is absolutely necessary to be performed by appellee in order to make the coal merchantable. It does appear from the evidence, however, that all of the iron pyrites removed by appellee is not in

deposit in bands or sheets between the layers of coal, but that a portion of it is found in irregular lump formations scattered throughout the coal vein.

Mineral in deposit in the earth is realty, to recover the value of which trover is not an appropriate action; but mineral severed from the earth by artificial causes, becomes personal property, and trover will lie for its wrongful conversion. Lyon v. Gormley, 53 Pa. St. 261.

lt is urged by appellee that if the iron pyrites was thrown away by it, as refuse, in the mine, appellant would have no access to it to take it out, because he has no shaft or way of entry into the mine; the shaft by means of which appellee operates the mine on appellant's ground, being on land owned by appellee. The answer to this is, that the question attempted to be raised by appellee, is not before the court for determination. The action is not brought to recover the value of iron pyrites in the mine, but to recover the value of that metal hoisted by appellee to the surface and shipped by it as a merchantable commodity.

As the case must be remanded for another trial and counsel have assumed to discuss the question of the measure of damages properly applicable to it, we can with propriety now state our views on the question.

In an action of trespass for taking coal from the mines of the plaintiff by negligence or inadvertence, the measure of damages uniformly adopted in this state is the value of the coal at the mouth of the pit, less the cost of carrying it from the place where it was dug, allowing defendant nothing for the digging. Donovan v. Consolidated Coal Co., 187 Ill. 28. The same rule as to the measure of damages has been applied to actions in trover. McLean County Coal Co. v. Long, 81 Ill. 359. This rule appellant seeks to have laid down as controlling in the case at bar.

The removal by appellee of the iron pyrites in question, from its place of deposit in the coal vein, is not attributable to negligence or inadvertence, but to a right, incident to its right by grant under the deed, to remove the coal. It is undisputed that appellee must, of necessity, remove the iron

pyrites in availing itself of its right under the deed to remove the coal. To deny to appellee the right to remove the iron pyrites would be to nullify the grant of the coal. The evidence shows that apart from the expense of hoisting the iron pyrites to the surface, the expense involved in preparing it for shipment as a merchantable commodity is necessarily incurred in saving the coal.

In Ludden v. Buffalo Batting Co., 22 Ill. App. 415, it was held that trover was an equitable action and the plaintiff could recover damages only to the extent of the injury actually sustained.

In our judgment the facts in this case require that the measure of damages be held to be the amount of the pecuniary loss the plaintiff has sustained; that such amount must be held to be the value of the property at the time of the conversion, within the rule as it is generally stated, determining the measure of damages in actions in trover. As applied to this case, the damages will be ascertained by the rule laid down in Donovan v. Consolidated Coal Co., *supra*, less the cost of digging the iron pyrites and the cost of separating it from merchantable coal.

For the error in giving the peremptory instruction at the conclusion of all the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*