(No. 26265.—

THE CITIZENS NATIONAL BANK, Appellee, *vs.* JOSEPH KESL & SONS CO. *et al.* Appellants.

*Opinion filed Nov. 18, 1941—Rehearing denied January 14, 1942.*

J. F. EECK, for appellants.

VERLIE, EASTMAN & SCHLAFLY, and EMERSON BAETZ, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

This cause is here on leave to appeal granted the defendants, Joseph Kesl & Sons Company and S. J. Groves & Sons Company, from a judgment of the Appellate Court rendered in favor of the plaintiff, the Citizens National Bank of Alton, Illinois. *Citizens Nat. Bank* v. *Kesl & Sons Co.* 309 Ill. App. 273.

In the summer of 1936, the construction of State Aid Route 28, section 1-A, was in progress from Oldenburg

to Granite City, in Madison county. Contracts for building this section of the highway were awarded to S. J. Groves & Sons Company and Joseph Kesl & Sons Company, corporations engaged in the general contracting business. A part of the road was near an unoccupied farm of 35 acres known generally as the Yager farm, owned by Ellen Yager, widow, and Mary Elinor Munroe, granddaughter, the heirs-at-law of Edward Yager, deceased. Mrs. Yager owned a one-third, and her granddaughter a two-thirds, interest in the farm. It appears that Ellen Yager was then indebted to the Citizens National Bank on a promissory note dated June 20, 1928, executed by her deceased husband and herself, in the amount of $1100, with interest payable annually at the rate of six and one-half per cent, the unpaid principal amounting to $1050. During the construction of the pavement, it becoming necessary to obtain a quantity of dirt with which to build a fill or embankment, the contracting companies went upon the Yager farm, excavated and removed therefrom 20,455 cubic yards of soil. Of this, 13,980 cubic yards were taken by S. J. Groves & Sons Company in the summer of 1936 and the remaining 6475 cubic yards by Joseph Kesl & Sons Company in the summer of 1937. The contractors received from the State of Illinois fifty-two cents per cubic yard for each yard of earth taken from the farm and used on the fill. At the time, the market value of such dirt was twenty-five cents per cubic yard. Prior to the removal of the soil by the respective companies they paid Mrs. Yager $700 for her one-third interest. Mary E. Munroe, the granddaughter, received no payments from the companies and neither she nor the mortgagee consented to the removal of the soil. Subsequent to the excavation, namely, on April 4, 1939, Ellen Yager and Mary E. Munroe assigned all causes of action they might have against the contracting companies for injury or trespass to the farm to the mortgagee and, on the same

day, executed a deed to the mortgagee quitclaiming all their right, title and interest in the farm.

Thereafter, on May 19, 1939, the plaintiff, the Citizens National Bank, instituted an action in the circuit court of Madison county against the defendants, Joseph Kesl & Sons Company and S. J. Groves & Sons Company. On April 11, 1940, an amended complaint was filed, the first count alleging that in 1936, as recounted, defendant S. J. Groves & Sons Company committed a series of trespasses upon the farm and, without plaintiff's knowledge or consent, removed large quantities of top soil and loam therefrom, and as the direct and proximate result of these unlawful acts a large part of the land was permanently and irremedially damaged, thereby rendering it unfit for cultivation and impairing the value of plaintiff's security. The complaint further alleged that Mary E. Munroe had assigned to plaintiff all her claims and causes of action against the defendant for injury or trespass to the farm; that as a direct and proximate result of the unlawful acts of the defendant Mary E. Munroe suffered damages to her undivided two-thirds interest in the farm of not less than $666, exclusive of all damages to, and depreciation in, the value of plaintiff's security caused by these same acts, and that plaintiff was then the owner of Mary E. Munroe's cause of action against the defendant for damaging her interest in the farm. Concluding allegations of the first count are that neither the plaintiff nor its predecessor in interest ever consented to the removal of any top soil, loam or earth from the farm by defendant, or anyone else; that neither had received any compensation for the respective damages sustained as a result of defendant's unlawful acts, and that the diminution in the fair and reasonable market value of plaintiff's security, namely, the farm, caused by defendant's unlawful acts exceeded $1600 and, consequently, was greater than the principal and interest then due upon

the note secured by the farm. The relief sought was a judgment against the defendant for $1520, representing $1050 unpaid principal and $470 past due interest as of March 1, 1939, together with interest thereon at the rate of six and one-half per cent from March 1, 1939, "plus" the sum of $1666. The second count of the complaint directed against defendant Joseph Kesl & Sons Company is essentially the same as the first count with the exception of the allegations respecting the amount of top soil taken from the farm and the amount of damages Mary E. Munroe is alleged to have sustained, namely, $333 instead of $666. The relief sought by the second count was the rendition of judgment against defendant Joseph Kesl & Sons Company for $1520, as against its co-defendant, and an additional sum of $833.

Defendants interposed an answer denying the material allegations of the complaint, and the cause was tried by the court without a jury. Competent evidence disclosed that top soil of an aggregate value of $5113.75 was taken from the Yager farm by defendants and, further, that they, in turn, received $10,636.60 for this dirt after its removal. According to additional testimony, unpaid taxes on the land of $1022.82 as of December 31, 1938, exceeded the value placed on the farm by defendants' witnesses. No evidence was introduced tending to show a diminution in the value of the farm following the removal of the excavated materials. The trial judge found that plaintiff was seeking to recover from defendants for permanent damages rendered to a farm upon which plaintiff held a first mortgage, that the decrease in the fair and reasonable market value of plaintiff's security, namely, the farm, caused by defendants' unlawful acts was in excess of $1600; that the measure of damages was the difference between the fair market value of the farm immediately before and immediately after the removal of the soil, but because plaintiff adduced no testimony proving the value of the

farm at any time and, hence, no depreciation in the value of its mortgage security, only nominal damages could be awarded. Accordingly, a judgment for $100 was rendered in favor of plaintiff and against defendants. Upon appeal, the Appellate Court for the Fourth District sustained the award of $100 as damages resulting from the impairment of plaintiff's security and rendered judgment therefor, together with an additional $2499 representing the sums of $1666 and $833 claimed as damages to plaintiff's interest, as assignee of Mary E. Munroe's two-thirds interest, in the farm.

The circuit court and the Appellate Court have successively and correctly concluded that plaintiff is entitled to nominal damages, only, rather than the amount of the mortgage indebtedness as damages to its mortgage security. Proof of an actual diminution in the value of the farm and, hence, the security, as the result of defendants' wrongful acts is wanting. In such cases the mortgagee is entitled only to the amount which the wrongful acts have impaired the security of the mortgaged property. (*Hummer* v. *R. C. Huffman Construction Co.* 63 Fed. (2d) 372.) The mere fact that delinquent taxes on the property may have exceeded its value is immaterial. This delinquency cannot be attributed to defendants and affords no basis for awarding other than nominal damages to plaintiff, as mortgagee, for the impairment of its security.

The decisive issue presented for decision is whether the allegations of plaintiff's complaint are sufficient to sustain the judgment rendered in its favor by the Appellate Court, or, instead limited plaintiff's recovery to merely nominal damages, as decided by the circuit court. To sustain the judgment of the Appellate Court, plaintiff maintains that its complaint, although perhaps inartistically framed, adequately stated a cause of action in trespass *quare clausum fregit* and that the measure of damages is the chattel value of the soil taken. It is established that where one wrong-

fully removes soil from land of another, the latter may recover the value of the soil in its severed condition. (*Sikes* v. *Moline Consumers Co.* 293 Ill. 112; *Donovan* v. *Consolidated Coal Co.* 187 id. 28; *Piper* v. *Connelly,* 108 id. 646; *Washington Ice Co.* v. *Shortall,* 101 id. 46; *Illinois and St. Louis Railroad and Coal Co.* v. *Ogle,* 82 id. 627; *Robertson* v. *Jones,* 71 id. 405.) The narrow question presented is thus whether plaintiff's complaint is sufficient to sustain a recovery for the value of the soil taken, in addition to damages for impairment to the mortgage security. Recourse to the complaint discloses allegations describing plaintiff's interest as a mortgagee and asserting the depreciation of its security. Following these allegations, the complaint alleges the ownership of a two-thirds interest in the farm in Mary E. Munroe and the assignment to plaintiff of her cause of action for defendants' wrongs. Precise figures as to the quantity of soil unlawfully removed by each defendant, 13,980 and 6475 cubic yards of top soil, respectively, are set forth. The allegations with respect to Mary E. Munroe's interest in the farm, the removal of the soil, and the assignment of her cause of action therefor to the plaintiff do not and cannot reasonably be said to relate to the impairment or diminution of the value of plaintiff's mortgage security. Furthermore, the complaint charged that Mary E. Munroe sustained damages to her two-thirds interest in the farm of not less than $666 "exclusive of all damages to, and depreciation in, the value of plaintiff's said security," and that plaintiff was the owner of Mary E. Munroe's cause of action against the defendants for damaging her interest in the farm. References to specific sums in the complaint are for "not less than" $666 and $333, respectively. Judgment was sought against each defendant in the aggregate amount of $1520, the amount of the mortgage note, with interest, "plus," as to defendant S. J. Groves & Sons Company, the sum of $1666, and, as to defendant Joseph Kesl

& Sons Company, $833. The foregoing allegations are sufficiently comprehensive to state a cause of action seeking a recovery against the defendants for their illegal trespass to the farm in removing top soil of an aggregate value of $2499. If treated merely as allegations pertaining to the diminution of plaintiff's security they are superfluous. They constitute, instead, the statement of a cause of action separate and distinct from the cause of action seeking damages to plaintiff's mortgage security. As the Appellate Court pertinently observed: "Under the circumstances such allegations could only be referable to the claim for damages for wrongful removal of the soil." Indeed, each defendant recognized this when it unsuccessfully sought to strike these allegations on the ground that Mary E. Munroe's cause of action "cannot be assigned so as to pass the right of action to the assignee, the plaintiff in this case." In any event, the measure of damages is not a cause of action but only the relief sought by the cause of action. "The cause of action is the wrong done—not the measure of compensation for it or the character of the relief sought." (*Geiger* v. *Merle*, 360 Ill. 497.) We hold that the complaint states a cause of action for damage by trespass to real estate in wrongfully excavating and carrying away top soil and loam therefrom comparable to the common law action of trespass *quare clausum fregit* as well as a cause of action for impairment to plaintiff's mortgage security. In such an action, the plaintiff is entitled to a recovery, as damages, of the chattel value of the property removed incident to the trespass.

Defendants insist, however, that the Appellate Court was without authority to render judgment for $2599. Section 92 of the Civil Practice act (Ill. Rev. Stat. 1941, chap. 110, par. 216f, p. 2433) provides that in all appeals the reviewing court may, in its discretion, and on such terms as it deems just, give any judgment and make any order which ought to have been given or made. This cause was

tried without a jury, the quantity of soil taken was stipulated by the parties, and the testimony as to the value of the earth per cubic yard, the aggregate amount being greatly in excess of plaintiff's *ad damnum,* was not challenged. A question of law was thus presented for decision—*i.e.,* the measure of damages. In such cases, the Appellate Court may render final judgment without remanding the cause to the trial court. (*Hills* v. *Hopp,* 287 Ill. 375; *Iroquois Furnace Co.* v. *Elphicke & Co.* 200 id. 411; *Manistee Lumber Co.* v. *Union Nat. Bank,* 143 id. 490.) Since no useful purpose could possibly have been served by remanding the cause to the circuit court, the Appellate Court properly rendered judgment for $2599 in conformity with the issues made by the pleadings and admittedly proved upon the trial.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*