(No. 33971.—

LUKE N. FINNERTY *et al.*, Appellees, *vs.* JOHN L. NEARY *et al.*, Appellants.

*Opinion filed November 26, 1956.*

HOLLERICH & HURLEY, of La Salle, for appellants.

BERRY & O'CONOR, of Streator, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

A decree of the circuit court of La Salle County construed the wills of Abigal Neary and Eliza Neary and fixed the interests of the plaintiffs and defendants in four parcels of real estate. Defendants appeal and the plaintiffs cross-appeal.

Abigal Neary died testate in 1892. She was survived by six children, John, James, Eliza and Alice Neary, Abby Finnerty, and Ellen Farrell, her only heirs-at-law. Plaintiffs are children and grandchildren of Abby Finnerty. Defendants are the widow, children and grandchildren of John Neary. James, Eliza and Alice Neary and Ellen Farrell all died without descendants. James Neary died intestate and his three sisters last named died testate. By inheritance and by devise the descendants of Abby Finnerty and John Neary have acquired interests in the land that had been owned by Abigal Neary. There is no dispute within the Finnerty family, and none within the Neary family. The controversy concerns the proper division of the property between the two families.

Both plaintiffs and defendants accept the decree to the extent that it relates to some of the land owned by Abigal Neary at her death. But neither plaintiffs nor defendants are satisfied with the decree to the extent that it fixes the

rights and interests of the parties in the parcel known as tract II, on which valuable sand deposits are located, and plaintiffs' cross appeal also challenges the decree with respect to parts of tract IV.

The principal dispute centers about the construction of the fourth and fifth clauses of Abigal Neary's will. By the fourth clause she devised tract II to her daughters, Eliza and Alice Neary, "during their natural lives, said Eliza Neary to have the right to dispose of her portion said real estate in fee by her last will and testament." By the fifth clause she devised another tract to her son John, and also "a one-half interest in any sand or clay pits that may be worked on the lands devised to Eliza and Alice Neary, one of which is now worked by Phelps and Phelps, also the right to take timber and coal for his own use from the land devised to said Alice and Eliza Neary. And the said John Neary shall have the right to dispose of said real estate in fee by his last will and testament."

Thereafter, Abigal added a codicil to her will which provided: "In the fifth clause of my said Will I did among other things give devise and bequeath to my son John Neary a one half interest in any sand or clay pits that may be worked on the lands devised to Alice and Eliza Neary. Now I do hereby give devise and bequeath all of the interest in said sand or clay pits to said Alice and Eliza Neary share and share alike."

Plaintiffs contend that by the fourth and fifth clauses of Abigal's will, and by the codicil, Eliza Neary took a life estate in one half of tract II with the power to dispose of that half by her will, and that her sister Alice took only a life estate in the other half without any power of disposition, by will or otherwise. The latter half interest, on this theory, descended as intestate property to the heirs-at-law of Abigal Neary. Defendants contend that these provisions read together show an intention to give Eliza and Alice equal interests in the sand deposits on the lands

devised to them. The gist of their contention is that Abigal Neary severed the sand deposits and treated them as a separate estate, and devised the fee in the sand to Eliza and Alice. The chancellor determined this issue in favor of the plaintiffs, and in our opinion he was correct in doing so.

Defendants point out that under the construction adopted by the chancellor, the one-half interest in tract II devised to Alice Neary for life remained intestate property, and they argue that a construction that produces such a result should be avoided. They urge that the provisions of the codicil which increased the devises to Abigal's other daughters, Ellen Farrell and Abby Finnerty, from a life estate to a fee sustain their position. They suggest that the purpose of the entire codicil was "to place the gift of property to her daughter Alice Neary on the same basis as the devise to her daughter Eliza, giving them both a fee, and increasing the life estate to her other two daughters, Abby Finnerty and Ellen Farrell, to a fee." They direct particular attention to the words, "Now I do hereby give devise and bequeath all of the interest in said sand or clay pits to said Alice and Eliza Neary share and share alike," and they urge that the words "share and share alike" indicate how it was intended that the beneficiaries participate in the property, and that when the testatrix devised "all of the interest in said sand or clay pits to said Alice and Eliza Neary share and share alike" she must have intended that each take the sand and clay pits in equal shares. Defendants also argue that if Abigal intended by the codicil only to revoke the devise made to John Neary in the fifth clause of her will of "a one-half interest in any sand or clay pits that may be worked on the lands devised to Eliza and Alice Neary," it was not necessary to mention her daughters in the codicil. A simple revocation of the provision for John Neary in the fifth clause would have accomplished that purpose.

The fourth clause, standing alone, disposed of tract II, including all interest in the sand. The fifth clause gave her son John "a one-half interest in any sand or clay pits that may be worked on the lands devised to Eliza and Alice Neary, * * *." It is upon this language that defendants contend that a separate estate was created in the sand. Separate estates may be created in minerals, as defendants state, and such separate estates are deemed real estate. (*Jilek* v. *Chicago, Wilmington & Franklin Coal Co.* 382 Ill. 241; *Kinder* v. *La Salle County Carbon Coal Co.* 301 Ill. 362.) We incline strongly to the view, however, that the fifth clause shows no more than an intent to give her son John one half of the income from such sand and clay pits as might be worked during his lifetime, that he was to have no interest in any sand until sand was mined, and that no separate estate was created. But we do not specifically decide that question, for the outcome is the same whichever way it is decided.

Defendants' argument that the construction adopted by the trial court results in partial intestacy is not convincing. There is partial intestacy under any construction. The codicil does not purport to revoke the fourth clause of the will. Under the interpretation urged by defendants, Alice Neary would have received only a life interest in tract II with no power of disposition under the will, but would have received a fee interest in the underlying sand with power of disposal. No purpose to be served by such a discrimination is suggested and nothing in the language of the codicil shows such an intent. The codicil deals with the interest given to John in the fifth clause of the will. Even if the will be interpreted as creating a separate estate in the sand, the interest devised to John was not a fee, and it was that interest that the codicil devised to Eliza and Alice, "share and share alike."

When Abigal intended to create a fee interest, she knew how to do it. By the second clause of her will, she had

made devises to Ellen Farrell and Abby Finnerty for life and after their death to their children "share and share alike in fee." She made a like devise to her son James. By the fourth clause, she provided that Eliza Neary should have the right to dispose of her portion of tract II in fee by her will. By the fifth clause she made the same provision for her son John. By the second clause of the codicil, she provided that the property devised in the will to her daughters, Ellen Farrell and Abby Finnerty, for life be given to them absolutely forever, "to sell and dispose of the same as they see fit." There is a complete absence of explicit language of this kind in the clause of the codicil on which defendants rely.

An examination of a photostatic copy of the original will confirms our conclusion. The draftsman wrote it in longhand. The fourth clause as originally drafted devised tract II to Eliza and Alice Neary "during their natural lives, they to have the right to dispose of said real estate in fee by their last will and testament." An interlineation changed the fourth clause to give the property to Eliza and Alice Neary "during their natural lives, said Eliza Neary to have the right to dispose of her portion said real estate in fee by her last will and testament." From the face of the will it thus appears that Abigal Neary intended to treat Eliza and Alice differently. To the one was given the power to dispose of the fee by her will; this power was consciously withheld from the other.

It is true that it was not necessary to mention Eliza and Alice in the codicil. But from the fact that the testatrix did mention them it does not follow that she intended the result for which defendants contend. Our task is to ascertain the intention of the testator and give it effect unless it violates an established rule of law or public policy. (*Vollmer* v. *McGowan,* 409 Ill. 306; *Riddle* v. *Killian,* 366 Ill. 294.) The provisions of the will and codicil are to be construed as a whole and effect given, if possible, to

every part of both. *In re Estate of Reeve,* 393 Ill. 272; *Jackman* v. *Kasper,* 393 Ill. 496; 1 James, Illinois Probate Law and Practice, sec. 43.12.

An incident, quality, or condition which attaches to a bequest or devise by virtue of an express provision in a will likewise attaches to an additional or substituted bequest or devise under a codicil, except where circumstances present show a contrary intent on the part of the testator. (57 Am. Jur., Wills, sec. 610.) See, also, annotation, 156 A.L.R. 777, 799: "In the majority of the cases in which the question has arisen, a stipulation in a will that a legacy or devise was given in trust or for life has been held to attach to an additional or substitute legacy or devise under a codicil." In our opinion this doctrine is applicable here. As we read the codicil we find no indication that Abigal intended to give Alice more than the life interest she received under the will.

A subsidiary question, raised by plaintiffs' cross appeal, requires construction of the will of Eliza Neary. Her mother, Abigal, disposed of her real estate by legal descriptions. By oversight or otherwise Abigal's will did not dispose of all of the land she owned, and some parcels descended as intestate property. Eliza Neary's will did not contain any legal descriptions. She identified one parcel: "First: I do hereby give and devise my interest in the home where I now reside, and the thirteen (13) acres of land surrounding the same, to my beloved sister, Alice Neary, for and during her natural life." In the second and third clauses of her will she devised the balance of her real estate, describing it as "all my interest in the lands devised to me by my beloved mother, Abigal Neary, * * *."

Plaintiffs contend that by this language Eliza intended to dispose of all of the property she received from her mother, whether under the will or by intestate succession. Defendants urge a literal construction, and assert that Eliza's will disposes only of property devised to her under

her mother's will, and that it does not include any property which she acquired by inheritance from her mother. The trial court agreed with defendants and adjudged that the interests in land which passed from Abigal to Eliza Neary as intestate property also descended from Eliza as intestate property. We do not agree with that construction.

The question is whether Eliza used the word "devised" in its technical sense, or whether she used it in a lay sense to describe all the property that came to her from her mother, whether by will or by inheritance. Technical expressions are, of course, read in a lay sense where the testator clearly so intended. (57 Am. Jur., Wills, sec. 1143; see *Caracci* v. *Lillard*, 7 Ill.2d 382.) The word "devise" is not always used with technical accuracy, even by lawyers. This court, for example, in *Sherman* v. *Flack*, 283 Ill. 457, 460, described a direction in a will to sell real estate after the death of the testator's widow as a "devise of money and not of land." The word "inherited" has been construed as meaning "take" or "go to," and so as sufficiently pervasive to include property taken by devise. 57 Am. Jur., Wills, sec. 1329; see *Andrews* v. *Applegate*, 223 Ill. 535.

Interests in three parcels of property owned by Abigal Neary were not disposed of by her will. Eliza inherited an interest in each of these parcels from her mother. The first parcel is that known as the Neary homestead. It consists of approximately 13 acres and it was vacant, unimproved property in 1892 when Abigal Neary died. Thereafter, a house was built on the property by Eliza and Alice, and was occupied by them as their home until the former's death. Thereafter Alice lived there until her death. The first clause of Eliza's will devised her interest in this property to Alice for life. In the second clause of her will she devised "all my interest in the lands devised to me by by beloved mother, Abigal Neary, * * * to my beloved sister, Ellen Farrell, for and during the term of her natural life, subject, however, to the rights of my sister, Alice, as

mentioned in the first clause hereof, * * *." In this instance Eliza's intention to include property which she inherited from her mother within the description of property devised to her by her mother is unmistakable.

The second parcel in which Eliza Neary acquired an interest as intestate property was a one-sixth interest in a small tract of less than 20 acres which is a part of tract IV. At the time of Abigal's death the sand pit of Phelps and Phelps was located in the northeast quarter of the northwest quarter of a certain section of land. Abigal Neary, by the fourth clause of her will, devised the east half of the northeast quarter of the northwest quarter to to Alice and Eliza for life, and empowered Eliza to dispose of the fee in her half by will. Abigal's will did not refer to the west half of this tract. In the fifth clause of her will, however, she said that the sand pit of Phelps and Phelps was located on the lands devised to Eliza and Alice. Actually, the Phelps and Phelps sand pit was located partially on the lands devised to Eliza and Alice and partially on the 20 acres immediately to the west. The fifth clause of Abigal's will shows that she thought she was giving these two daughters all of the land on which the sand pit was located, although a part of it was not included in the legal description. It is not contended that Eliza took an interest in this property under her mother's will. But we agree with the plaintiffs that these circumstances are effective to show that Eliza regarded it as property that had been devised to her by her mother, and intended to include it in her own will.

A third parcel not disposed of by Abigal's will was the remainder that followed the life interest given to her daughter Alice. This remainder interest thus descended as intestate property and Eliza Neary inherited an undivided one sixth of it. This interest, of course, she obtained as intestate property. But Eliza had also obtained a one half interest in this same land by devise from her mother. Her

will disposes of "all my interest in the lands devised to me by my beloved mother." It is not restricted to the interests she received by devise from her mother. Therefore even under a strict construction this interest passed under her will.

The decree of the circuit court of La Salle County is affirmed as to the appeal prosecuted by defendants and reversed as to the cross appeal of plaintiffs. The cause is remanded with directions to modify the decree in accordance with this opinion.

*Affirmed in part and reversed in part*
*and remanded, with directions.*