MEADOWLARK FARMS, INC., Petitioner, *v*. THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 73-49; 

Fifth District—February 22, 1974.

Jon M. Cassady, of Indianapolis, Indiana, and James B. Bleyer, of Marion, for petitioner.

William J. Scott, Attorney General, of Springfield (Larry R. Eaton and Delbert Haschemeyer, Assistant Attorneys General, of counsel), for respondents.

Mr. JUSTICE EBERSPÁCHER delivered the opinion of the court:

Meadowlark Farms, Inc., petitions for review of an order by the Illinois Pollution Control Board which found it guilty of violating the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, § 1012(a)) and certain rules of SWB-14 of the Sanitary Water Board's rules and regulations; ordered it to cease and desist the pollution, pay a penalty of $141.66, submit an abatement plan along with a performance bond, and abate the pollutional discharge.

Petitioner contends that its motion to dismiss should have been granted; that it does not have ownership and control over the property from which the discharge originates; that it has not caused, threatened and allowed the discharge of contaminants within the meaning of section 12(A) of the Act (Ill. Rev. Stat. 1971, ch. 111½, § 1012(a)); that its lack of knowledge that the discharge of contaminants was occurring is a defense to the complaint; that it is regulated by chapter 4, Mine Related Pollution Control Board Regulations, and the complaint does not charge it with a violation of chapter 4 provisions; that the Illinois Environmental Protection Act as applied in this instance is retroactive and therefore unconstitutional and void; and finally that the Pollution Control Board decision is not supported by a reasoned opinion.

There is no dispute as to the facts in this case. Petitioner, Meadowlark Farms, Inc., is a wholly owned subsidiary of American Metal Climax, Inc. In November of 1967 the petitioner acquired its interest in the surface estate of a piece of property known as Peabody 43. Although the land was acquired with the expectation of surface mining the No. 6 Coal underlying the property, the petitioner's primary business is farming, and its chief function is to hold and manage the land reserves of its parent company.

Peabody 43 is an abandoned, slope-entry deep mine site, which was

used to gain access to the No. 5 Coal Seam. The mine was operated between the years 1943 and 1957. During that period, refuse material was hand picked from the raw coal and spread over an 18-acre area, from one to eight feet thick. This refuse material absorbs rainfall and releases water gradually in the form of seepage. Associated with this refuse material is a mineral commonly known as "pyrite." When air and water move through the refuse material, they react with the pyrite to form acid mine drainage, commonly called AMD.

An unnamed tributary of Brushy Creek flows across the Peabody 43 mine site, which prior to the operation of the mine flowed only when it rained. Since the creation of the refuse pile, the seepage which contains AMD has created a flow in this tributary which is continuous throughout most of the year. Brushy Creek itself is a larger stream into which the tributary flows and, even though it too is an intermittent stream, it contains several deep holes which do not dry up. Prior to the creation of the Peabody 43 refuse pile there were fish in Brushy Creek, particularly in those deep holes, but since the creation of the refuse area these fish were subject to periodic kills.

On several occasions since December of 1971 a surveillance engineer for the Illinois Environmental Protection Agency (EPA) visited the Peabody 43 mine site and conducted inspections, recording his observations and taking water samples from Brushy Creek and its tributary. From these analyses it was established that AMD was seeping from the refuse area on petitioner's property into the tributary of Brushy Creek and Brushy Creek itself. On June 16, 1972, when the surveillance engineer visited the area, he observed some dead fish in Brushy Creek near one of his sampling stations. He immediately notified an official of the Division of Fisheries of the Department of Conservation who determined the extent of the fish kill and placed the value on the dead fish at $141.66. There was no question that the fish died as a result of the AMD seeping from the Peabody 43 refuse pile.

Petitioner was informed of the discharge of contaminants from its property by the Environmental Protection Agency through a letter dated June, 1972. Amax Coal Company, a division of the petitioner's parent company, immediately began an investigation of the refuse area and became convinced that seepage from the Peabody 43 property was contaminating the waters of Brushy Creek and its tributary. Thereafter Amax requested a meeting with EPA officials to discuss abatement plans, but prior to this meeting the complaint was filed. The meeting resulted solely in settlement discussions, but Amax later undertook abatement action on its own. A hearing was held November 15, 1972, and the Pollution Control Board issued its order January 16, 1973.

Petition first contends that its motion to dismiss should have been granted, and in support of this point argues that the Illinois Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, § 1001 et seq.) grants to an administrative agency both legislative and judicial powers in violation of section 1 of article II and section 1 of article VI of the Constitution of the State of Illinois. It is argued that under section 5(b) and (c) of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, § 1005(b) and (c)), the Pollution Control Board is delegated powers which are legislative in nature, to-wit, the power to adopt rules, regulations and standards in accordance with the Act. And under section 5(d) of the Act (Ill. Rev. Stat. 1971, ch. 111½, § 1005(d)), the Board is delegated powers which are judicial in nature, to-wit, the power to conduct hearings upon complaints charging violations of the Act. This, according to the petitioner, constitutes a violation of the separation-of-powers doctrine of section 1 of article II of the Illinois Constitution and therefore renders the Environmental Protection Act unconstitutional.

■■■ This argument is totally without support. The Pollution Control Board has been delegated powers which enable it to exercise both regulatory and adjudicatory functions in furtherance of the Act, just as many other State agencies have been delegated powers which are legislative and judicial in nature. This delegation is perfectly compatible with the separation-of-powers doctrine. The Illinois Supreme Court has stated that the separation-of-powers clause was not designed to achieve a complete divorce between the three departments of government, but rather was a recognition of the fact "that the whole power of two or more of these departments shall not be lodged in the same hands, whether of one or many. *Field v. People ex rel. McClernand,* 2 Scam. 79." (*People v. Reiner* (1955), 6 Ill.2d 337, 129 N.E.2d 159.) Separation of powers, therefore, is a method to prevent the accumulation of power in the hands of one breach of government. This principle does not prevent the legislature from delegating to an administrative agency the power to do those things which it might properly but not understandingly or advantageously do itself. Accordingly, when the legislature has the power to enact a law, it also has the power, as a necessary adjunct, to adopt a procedure for its administration and may do so through commissions, boards or committees, and may grant to such administrative bodies certain authority and powers in keeping with the spirit of the act, for its efficient and practical application and operation. *Reif v. Barrett* (1934), 355 Ill. 104, 188 N.E. 889.

By enactment of the Environmental Protection Act the General Assembly declared the public policy of the State of Illinois with reference to water pollution, and subsequently the public policy of the State, by

adoption of the 1970 Constitution, was declared to be that every person has an inherent right to a clean and healthful environment (Ill. Const. (1970), art. XI, sec. 1). Under title III of the Act, dealing with water pollution, the General Assembly stated its purpose to purify, cleanse and enhance the waters of Illinois (Ill. Rev. Stat. 1971, ch. 111½, § 1011). Section 12 defined the acts prohibited by the statute (Ill. Rev. Stat. 1971, ch. 111½, § 1012), and section 13 granted the Pollution Control Board the power to make rules and regulations in furtherance of title III (Ill. Rev. Stat. 1971, ch. 111½, § 1013). And under section 3(n) of the Act "water pollution" is defined as:

"such alteration of the physical, thermal, chemical, biological or radioactive properties of any waters of the State, or such discharge of any contaminant into any waters of the State, as will or is likely to create a nuisance or render such waters harmful or detrimental or injurious to public health, safety or welfare, or to domestic, commercial, industrial, agricultural, recreational or other legitimate uses, or to livestock, wild animals, birds, fish, or other aquatic life." (Ill. Rev. Stat. 1971, ch. 111½, § 1003(n)).

Thus, the legislature has conferred authority and discretion as to the execution of the law. However, this authority and discretion is to be exercised under and in pursuance of the standards described by section 13(a)—(i) (Ill. Rev. Stat. 1971, ch. 111½, § 1013(a)—(i)) and the procedures prescribed by title VII (Ill. Rev. Stat. 1971, ch. 111½, §§ 1026-1029). This is a proper delegation of administrative authority. (*Southern Illinois Asphalt Co. v. Environmental Protection Agency* (1973), 15 Ill.App.3d 66, 303 N.E.2d 606.) In *Southern Illinois Asphalt* this court was faced with a similar challenge to the delegation of authority to the Pollution Control Board in the area of air pollution control. There we upheld the constitutionality of the Act as a valid delegation of legislative power to an administrative agency. That case is controlling here.

■■ Regarding the delegation of adjudicatory functions to the Pollution Control Board under section 5(d) of the Act (Ill. Rev. Stat. 1971, ch. 111½, § 1005(d)), we can find no unlawful delegation. The grant of authority to conduct hearings upon complaints charging violations of the Act is merely a delegation of quasi-judicial powers to the Pollution Control Board incidental to its duty of administering the law. (*Department of Finance v. Gandolfi* (1940), 375 Ill. 237, 30 N.E.2d 737; *Department of Finance v. Cohen* (1938), 369 Ill. 510, 17 N.E.2d 327.) The Board is limited in its jurisdiction, procedural due process is provided for, and the Board's decisions are subject to judicial review.

■■ In the instant case, petitioner was afforded all these protections. A separate entity, the E.P.A., conducted the investigation, filed the com-

plaint and had the burden of proving a violation of the Act (Ill. Rev. Stat. 1971, ch. 111½, §§ 1030, 1031(b), and (d)). Petitioner received notice of the complaint filed against it (Ill. Rev. Stat. 1971, ch. 111½, § 1031(a)). A public hearing was held which gave the petitioner the opportunity to be represented by counsel, make oral or written argument, offer testimony, cross-examine witnesses and otherwise present its case (Ill. Rev. Stat. 1971, ch. 111½, § 1032). After due consideration of the evidence, the Board issued its final order with a written opinion (Ill. Rev. Stat. 1971, ch. 111½, § 1033(a)). Finally, the hearing below is subject to judicial review, as evidenced by this appeal (Ill. Rev. Stat. 1971, ch. 111½, § 1041). Due process does not necessarily imply court proceedings, and so long as the hearing is orderly, follows established rules which do not violate fundamental rights, and affects all persons alike, it is due process of law. (*Reif v. Barrett* (1934), 355 Ill. 104, 188 N.E. 889.) The Environmental Protection Act provides due process.

In light of this discussion we find petitioner's argument of no avail. Petitioner can hardly argue that the whole power of either the legislative or judicial branch is vested in the Pollution Control Board, when the General Assembly has defined the limits with which the Board may adopt rules and regulations, and decisions of the Board are subject to judicial review. Therefore the delegations of both legislative and adjudicatory functions to the Pollution Control Board under section 5(b) and (c) are valid and withstand attack on the constitutional grounds of separation of power. Cases cited by the petitioner do not support its contention.

■■■ Additionally, petitioner argues that section 42 of the Act (Ill. Rev. Stat. 1971, ch. 111½, § 1042) violates article VI, section 1 of the Illinois Constitution of 1970 because it delegates the power to assess discretionary penalties. However, petitioner fails to note that the Board's order of which it is seeking review does not raise the issue of discretionary penalties. The penalty of $141.66 was imposed on the petitioner pursuant to that portion of section 42 of the Act which provides:

> "* * * Any person who violates this Act, or an order or other determination of the Board under this Act and causes the death of fish or aquatic life shall, in addition to the other penalties provided by this Act, be liable to pay to the State an additional sum for the reasonable value of the fish or aquatic life destroyed. * * *"

An official of the Division of Fisheries of the Illinois Department of Conservation determined the reasonable value of the fish killed in Brushy Creek and its tributary and testified that his determination of the reasonable value of the fish involved a simple computation of multiplying the

value per fish times the estimated total number of fish killed. (R. 118-121.) Petitioner does not contend that this standard and method used in determining the reasonable value of the dead fish is unconstitutional. Furthermore even if this argument was made, our supreme court has upheld the delegation of the power to impose penalties where there are standards, or the penalty is merely a matter of calculation or computation from data upon which all minds must ordinarily reach the same result. (*Department of Finance v. Gandolfi, supra., Department of Finance v. Cohen, supra.* See also *Southern Illinois Asphalt Co. v. Environmental Protection Agency, supra.*) Therefore, since the discretionary penalty provisions of section 42, granting to the Board the power to impose up to $10,000 in penalties, is not in issue, and the provision granting to the Board power to award to the State the reasonable value of the fish killed is in conformity with existing State law, we uphold the constitutionality of the Act in face of this petitioner's claim.

Petitioner next contends that the Pollution Control Board erred in concluding that ownership of the surface estate makes it responsible for the pollutional discharge. In support of this contention the petitioner argues that the extent of its interest in the property is limited to ownership of the surface estate, and since the iron pyrite, a mineral included in the refuse pile, never left the premises and it was never intended that it should leave the premises, the material remained part of the mineral estate, which was reserved by the grantor. Thus, petitioner argues that it has no interest nor duty toward the refuse piles, the source of contamination. In support of its contentions petitioner cites *Smoot v. Consolidated Coal Co.* (1904), 114 Ill.App. 512, and *Palumbo v. Quinn* (1944), 323 Ill.App. 404, 55 N.E.2d 825, and the deed of conveyance which gave petitioner title to the surface estate only. However, these cases and the deed do not sustain petitioner's contentions. On the contrary, they lend support to the argument of the Pollution Control Board that petitioner owns and controls the property from which the pollutional discharge originates.

In *Smoot v. Consolidated Coal Co., supra,* the plaintiff conveyed by warranty deed "all coal in, under and throughout" a tract of land with a right to mine and remove the same. As the coal was removed, the iron pyrite was separated and treated as waste. When the defendant found a market for the pyrite, it returned to the land and removed the pyrite for the purpose of selling it. The plaintiff filed suit to recover the value of the pyrite to which he claimed title. The court found that iron pyrite is a mineral separate and distinct from coal and therefore the deed did not pass title to the pyrites. Furthermore, the court stated that minerals

in deposit are realty, but minerals severed from the earth by artificial means become personal property.

■■ This brings us to an analysis of the holding in *Palumbo v. Quinn, supra.* In that case defendant Sittig sold and conveyed to the plaintiff by an instrument in writing all topsoil from certain property. Plaintiff then stripped said topsoil from the land, piled it and completely prepared it for hauling. Defendant Sittig thereafter sold the same property to defendant Quinn by deed without any mention of her prior conveyance of the right to sever topsoil to the plaintiff. It was undisputed that defendant Sittig and the plaintiff treated the topsoil, after it was severed, as personalty belonging to the plaintiff. On the other hand, defendant Quinn argued that the piles of topsoil that were allowed to remain on the land were real estate and that title passed to him under the deed. Pointing to the fact that the Illinois Supreme Court considers topsoil after it is severed from the land as personal property subject to conversion (*Citizens National Bank v. Joseph Kesl & Sons Co.* (1941), 378 Ill. 428, 38 N.E.2d 734), the court in *Palumbo* quoted with approval the statement of the law in 1 Tiffany, The Law of Real Property 886—7 (2d ed.):

> "Sec. 253. Individual rights of ownership. The ownership of land prima facie includes the soil or earth, and also the minerals in or on the ground, and consequently the tenant in fee simple of the land is ordinarily the owner of all deposits or strata of clay, stone, iron, and other mineral substances, and such substances, while thus in place are things of a real and not a personal character. The mineral or soil may, however, be removed from their natural position in or on the ground, and, when thus severed from the land by one authorized to make the severance, they become personalty, even though they still remain on or below the surface of the land, provided, it seems, their removal from their natural position is with a view to their ultimate removal from the land."

The natural inferences to be drawn from the holding in *Palumbo* are that the owner in fee of the surface and/or mineral estate in its natural state is an owner of real property. But when the mineral or soil is removed from its natural state by one authorized to make the severance they become personal property, if they are severed with a view to their ultimate removal from the land. It is well established that minerals in place are capable of being held by title in fee, apart from ownership of the surface estate, to which all usual rights and incidents of ownership of realty attach. (*Pickens v. Adams* (1955), 7 Ill.2d 283, 131 N.E.2d 38; *Finnerty v. Neary* (1956), 9 Ill.2d 495, 138 N.E.2d 540.) And according to the holding in *Palumbo,* minerals severed from the land with the in-

tent they be removed become personalty belonging to the owner of the mineral estate. What then is the status of minerals severed from the land by the owner of the mineral estate and left abandoned in piles on the surface estate? Petitioner contends that the refuse material including the iron pyrite never left the premises, that it was never intended that it should leave the premises, and that thus according to *Palumbo* it is not personalty, but remains a part of the mineral estate. If this be the case, the refuse pile with the iron pyrite nevertheless belongs to or is owned by the petitioner according to the terms of the warranty deed. The deed transferring to the petitioner ownership of the surface estate contains the following reservation:

> "The Grantors except from this conveyance all coal, oil, gas and other minerals *beneath the surface* of the real estate above described, together with the right to mine and remove the same, as excepted and revised in prior deeds of record." (Emphasis ours.)

The owner of the mineral estate, therefore, owns title to all minerals lying beneath the surface *only* and not to minerals lying above and on the surface.

■■ Thus, had the owner of the mineral estate severed the iron pyrites from beneath the surface and left them on the surface with the intent to remove them, as the petitioner argues it did not, the pyrites would be personalty belonging to the owner of the mineral estate. However, since the owner of the mineral estate abandoned the iron pyrites in the form of refuse piles on the surface estate, they remained part of the mineral estate on or above the surface. And since the warranty deed transferred to the petitioner ownership of the property excepting the mineral estate lying *beneath* the surface, we find that the petitioner is therefore the owner of the iron pyrite refuse piles lying on and above the surface.

■■ Petitioner further argues that it has not caused, threatened or allowed the discharge of contaminants within the meaning of section 12(a) of the Act (Ill. Rev. Stat. 1971, ch. 111½, § 1012(a)). Petitioner contends that its mere ownership of the surface estate from which the discharge originates is the only relationship to the transaction responsible for the discharge and that to expect the petitioner to exercise control to prevent pollution would be unreasonable. In conjunction, the petitioner states that its lack of knowledge that the discharge of contaminants was occurring is a defense to the complaint. We find these arguments without merit. To clarify this issue, it should be noted that the petitioner was charged with causing or allowing the discharge of contaminants so as to cause or tend to cause water pollution in Brushy Creek and tributary in violation of Section 12(a) of the Environmental Protection Act and certain rules of SWB-14 of the Sanitary Water Board's rules and regulations.

Petitioner was not charged with creating the refuse piles or with responsibility for the operation of the Peabody 43 mine which resulted in the creation of the refuse pile. The Pollution Control Board merely found that the petitioner had ownership of the surface rights of the property which was the source of the violation, that the evidence showed that the pollution had its source on that property and that fish were killed, and that the petitioner had the capability of controlling the pollutional discharge. Therefore, petitioner was found to have violated section 12(a) of the Act, as well as violating the other rules and regulations related to water pollution. The findings of the Board were correct.

We have found that the petitioner was the owner of the refuse piles which were the source of the pollutional discharge, but to see how the petitioner violated the Act, we must look to the Act itself. Section 12(a), which petitioner was found guilty of violating, states that:

"No person shall: (a) Cause or threaten or allow the discharge of any contaminants into the environment in any State so as to cause or tend to cause water pollution in Illinois, either alone or in combination with matter from other sources, or so as to violate regulations or standards adopted by the Pollution Control Board under this Act; * * *."

Petitioner admits that seepage from the refuse pile containing AMD has created a flow in the tributary of Brushy Creek and that the fish died as a result of the AMD seepage. Furthermore, soon after the petitioner was given notice of its violation, Amax Coal Co., a division of the petitioner's parent company, investigated the charges and began an abatement program. This unquestioned pollution proves sufficiently that the petitioner allowed the discharge within the meaning of section 12(a).

■■ Petitioner's so-called lack of knowledge that the discharge existed provides no defense. The Environmental Protection Act is *malum prohibitum;* no proof of guilty knowledge or *mens rea* is necessary to a finding of guilt. In *Bath, Inc. v. Pollution Control Board* (1973), 10 Ill. App.3d 507, 294 N.E.2d 778, the Fourth District Appellate Court was faced with this precise issue with regard to air pollution. Bath, Inc., the owner of a landfill, was found in violation of certain rules and regulations dealing with landfills, was fined $2000, and ordered to stop underground burning in violation of the Refuse Disposal Law (Ill. Rev. Stat. 1967, ch. 111½, §§ 471—476). Under section 496 of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, § 1049(c)) the Refuse Disposal Law remained in effect. The defendant Bath asserted that it had no knowledge of the cause of the burning and argued that a violation could not be predicated upon the existence of burning in the absence of a finding that the defendant by its affirmative act caused or intended the

burning. The rule which was violated prohibited burning except in an approved incinerator. That court found that it was not an element of the violation that burning was knowing or intentional, and therefore held that knowledge, intent or *scienter* was not an element of the case to be established by the E.P.A. at a hearing before the Pollution Control Board upon the issuing of burning. This rule has also been applied in other jurisdictions with regard to water pollution. (*State v. Kinsley* (Gloucester County Ct. 1968), 103 N.J. Super. 190, 246 A.2d 764, *aff'd.* (Super.Ct. 1969), 105 N.J. Super. 347, 252 A.2d 224.) We feel that the same reasoning applies here; that knowledge is not an element of a violation of section 12(a) and lack of knowledge is no defense.

■■ Petitioner's argument that the chapter 3 regulations of the Pollution Control Board are not applicable here affords it no relief, and a finding that the petitioner violated them is not prejudicial error. Petitioner was found guilty of violating section 12(a) of the Act, and pursuant to section 42 petitioner was ordered to pay $141.66 for the fish killed as a result of that violation. Since the evidence was sufficient to support a finding of a violation of section 12(a), we need deal no further with this issue. A judgment will not be reversed unless it appears that the error affected the outcome below. (Baker v. Baker (1952), 412 Ill. 511, 107 N.E.2d 711.) Nor will it be reversed where the result would most likely have been the same. (*Jenkins v. Hechtman* (1967), 83 Ill. App.2d 72, 226 N.E.2d 383; *Shafer v. Northside Inn, Inc.* (1963), 44 Ill. App.2d 86, 194 N.E.2d 5.) If indeed there were any error committed on this issue, it would not have been reversible error.

■■ Petitioner's argument that the Environmental Protection Act as applied to it is retroactive and an *ex post facto* law is simply not supported by the evidence. The complaint charged the petitioner with allowing pollutional discharges from its property on or subsequent to July 1, 1970, and continuing through the close of the record in this case. The Environmental Protection Act went into effect on July 1, 1970. Therefore the violations which petitioner was found guilty of allowing to occur, took place after the Act was in force. Thus, the Act is not retroactive as applied to the petitioner.

■■ The petitioners' final argument is that the decision of the Board is not supported by a reasoned opinion since the Board failed to rule on petitioner's motion to dismiss until long after it had been filed and since its decision failed to address itself to every point raised in the motion to dismiss. However, the Board's orders comply wth the statutory requirements that the Board publish a written opinion stating the facts and reasons leading to its decision (Ill. Rev. Stat., ch. 111½, § 1033(a)). Since we have decided that the constitutional arguments, which were

raised in the motion to dismiss, are without merit, even if it were error to fail to address the arguments in the ruling on the motion, it was not prejudicial error. Furthermore, the Board's decision finds sufficient support in the record.

Accordingly, the decision of the Pollution Control Board is affirmed.

G. MORAN, P. J., and CREBS, J., concur.