THOMAS P. KAEDING, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 72-77; ▮▮▮▮▮▮)

Second District—September 12, 1974.

Warren A. Browning, of Waukegan, for petitioner.

William J. Scott, Attorney General, of Chicago (Richard W. Cosby, and Kenneth J. Gumbiner, Assistant Attorneys General, and Richard P. Glovka, of counsel), for respondents.

Mr. JUSTICE GUILD delivered the opinion of the court:

The above case arises as a result of the order of the Pollution Control Board entered on February 17, 1972, as it pertains to Thomas P. Kaeding. The same record and exhibits have been furnished this court in this case, *North Shore Sanitary District v. Pollution Control Bd.* (1974), 22 Ill.App.3d 28, 316 N.E.2d 782, and *Bederman v. Pollution Control Bd.* (1974), 22 Ill.App.3d 31, 316 N.E.2d 785. For this reason attention is also directed to those two respective cases.

On September 10, 1971, Richard P. Glovka filed a citizen's complaint before the Pollution Control Board (PCB) naming Alfred B. Bederman, Kaeding and the North Shore Sanitary District, among others, for alleged violations of the sewer-ban order of the PCB entered March 31, 1971. This order prohibited any sewer connections to existing sewer facilities.

After lengthy hearings, on February 17, 1972, the PCB found that Kaeding and Bederman "acted in defiance of our variation denials after having sought our assistance in obtaining permits," and directed them "to disconnect any tie-ons they have made and to cease and desist any future tie-in in connection to the Lake Bluff Sewer system without proper authority."

In the month of February, 1971, Kaeding inquired of the village of Lake Bluff and the sanitary district whether he could connect to a sewer stub into property known as Lot 4 in Margaret Kennedy's Sub-division which Kaeding was contemplating purchasing. The manager of the sanitary district advised him that the sewer was available to this lot. On March 16, 1971, Kaeding and his wife entered into a contract to buy the lot in question and paid $850 down on a total price of $8500. The deed, however, was not issued until April, the following month.

In April, Kaeding inquired of the village for a construction permit and was advised of the March 31, 1971, order of the PCB, and that there had been a reversal of his right to tap onto the sewer. The Village suggested he apply for a variance, which he did on May 5, 1971. On May 14, 1971, both Kaeding and Bederman were told by the village that the permits could not be issued. On May 17, 1971, the district wrote to Kaeding and advised him that the March 31, 1971, order of the PCB applied. On June 7, 1971, the village wrote the district with reference to both Kaeding and Bederman and inquired of the district as to "what permits can be issued and which may not," observing that permits had been issued to "Nilles" and the "Industrial Centre", who had also been named as respondents in the Glovka complaint.

On June 21, 1971, Kaeding again wrote to the village stating that he would use a holding tank if the village would issue the permit. On July 13, 1971, Kaeding, apparently having been advised that permits could be issued, again wrote to the village and asked if he could get a permit. On that date the village wrote to the sanitary district and asked if Kaeding could tap in, observing that the State had approved this sewer on October 19, 1956. On July 27, 1971, the sanitary district wrote to the village and advised the village that the permit previously issued by the State was not affected by the March 31, 1971, PCB ban and that the sewer stub into Kaeding's lot carried with it the right to connect. On July 29, 1971, the village issued a building permit to Kaeding. About August 1, 1971, Kaeding started the construction of his residence, and the sewer was connected August 6, 1971. Although Kaeding did not, in fact, know what had happened to his petition for variance previously filed with the PCB, it had been denied without a hearing by the PCB on July 26, 1971. Kaeding completed construction of his house for the sum of $23,500 making a total investment by him in the premises of $31,500, including the

lot. It was 90% completed at the time of the hearing on Glovka's complaint, and he is now occupying the house.

The PCB found that none of the defendants, including Kaeding, had violated the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 et seq.). However, as indicated, the PCB entered the cease-and-desist order and directed him to disconnect his sewer in its order of February 17, 1972. Reference is made to *Bederman v. Pollution Control Bd.* (1974), 22 Ill.App.3d 31, 316 N.E.2d 785, for the findings of the PCB in this order.

. It is again to be noted that, with the exception of the sanitary district, neither Kaeding, Bederman nor any of the parties named in Glovka's complaint before the PCB were party to the March 31, 1971, order of the PCB.

In his petition for review, Kaeding has raised four issues: the first being as alleged in the *Bederman* case, that is, his right to tie in to the pre-existing sewer was vested in his predecessor in title and could not be constitutionally taken away from him. In view of our findings herein, it is not necessary to rule upon this issue.

■■■ The second contention of Kaeding is that the PCB is estopped from ordering him to disconnect his sewer. The Sanitary Water Board, the predecessor to the PCB, had approved the connection to this sewer on October 19, 1956. As we indicated in *Bederman*, this issue was passed upon by this court in *Wachta v. Pollution Control Bd.* (1972), 8 Ill. App.3d 436, 289 N.E.2d 484. The doctrine of estoppel does not ordinarily apply to public bodies. Where, however, a party has relied upon the acts, or in this case the permit of the State, under equitable principles as enunciated in *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill.2d 427, 447, 220 N.E.2d 415, we find that the PCB, on behalf of the State, is in fact estopped from refusing to recognize the permit to hook onto the existing sewer as authorized by the Illinois Department of Public Health. We further adopt our findings in *Bederman v. Pollution Control Bd.* (1974), 22 Ill.App.3d 31, 316 N.E.2d 785.

■■ The third contention of Kaeding is that the PCB did not have the power to enter an order upon him to cease and desist, and that the proper procedure requires that the State's Attorney bring such a proceeding. The Supreme Court of Illinois in *City of Waukegan v. Pollution Control Bd.* (1974), 57 Ill.2d 170, 311 N.E.2d 146, has held, however, that the legislature has conferred upon the Illinois Pollution Control Board those powers that are reasonably necessary to accomplish the legislative purpose of the administrative agency; specifically the imposition of monetary "penalties" for violation of the Environmental Protection Act, and necessarily the power to order compliance with the Act.

For this reason, we find no merit to the contention that the State's Attorney must bring the action to enforce the provisions of the Act.

Kaeding's last contention is that his petition for variance was irrelevant and immaterial to these proceedings. With this we agree, and reference is made to our reasoning in *Bederman v. Pollution Control Bd.* (1974), 22 Ill.App.3d 31, 316 N.E.2d 785.

We therefore reverse the order of the Pollution Control Board ordering Kaeding to cease and desist any connection to the existing sewer.

Reversed.

T. MORAN, P. J., and SEIDENFELD, J., concur.