ALFRED B. BEDERMAN et al., Petitioners, v. THE POLLUTION CONTROL BOARD et al., Respondents.

(No. 72-74; ▇▇▇▇▇▇▇▇▇▇)

Second District—September 12, 1974.

Jenner & Block, of Chicago (Leah S. Hamilton, of counsel), for petitioners.

William J. Scott, Attorney General, of Chicago (Richard W. Cosby and Kenneth J. Gumbiner, Assistant Attorneys General, and Richard P. Glovka, of counsel), for respondents.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is a petition by Alfred B. Bederman and Henriet Bederman, his wife, to review an order of the Pollution Control Board entered on February 17, 1972, as it pertains to them. This case and *Kaeding v. Pollution Control Bd.* (1974), 22 Ill.App.3d 36, 316 N.E.2d 788, and *North Shore Sanitary District v. Pollution Control Bd.* (1974), 22 Ill.App.3d 28, 316 N.E.2d 782, are closely allied, and attention is directed to those two respective cases. The same record and exhibits have been furnished this court for the three separate actions.

On September 10, 1971, Richard P. Glovka filed a citizen's complaint before the Pollution Control Board naming Alfred B. Bederman, Thomas P. Kaeding and the North Shore Sanitary District (hereinafter referred to as the sanitary district), among others, for alleged violations of the sewer-ban order of the Pollution Control Board entered March 31, 1971, prohibiting any sewer connections to existing sewer facilities.

After lengthy hearings, the Pollution Control Board found and ordered on February 17, 1972, that "Bederman shall cease and desist the connection of any sewer connection to the Lake Bluff sewer system and shall disconnect any connection heretofore made." The order further provided a similar cease-and-desist order as to Kaeding. The North Shore Sanitary District was fined the sum of $5000 for violations of the March 31, 1971, sewer-ban order.

That part of the record before us, as it applies to the Bedermans, discloses the following: Mr. and Mrs. Bederman bought their property on May 7, 1970, from Nilles (also a respondent in the Glovka complaint as to other property) for $40,000; the property being known as Lot 3 in Forest Cove Addition to the Village of Lake Bluff. The evidence discloses that Nilles had spent $5000 on each of the 10 lots in Forest Cove Addition for the cost of the sanitary-sewer system. As yet, Bedermans have not built their home. On May 4, 1971, the Bedermans wrote to the Village of Lake Bluff (hereinafter referred to as Lake Bluff) asking whether they could build on the lot in question, and whether a building permit could be issued. Lake Bluff in turn wrote the Sanitary District inquiring as to whether the permit might be issued, and on May 17, 1971, the Bedermans were informed that the sewer ban prohibited connection to the proposed home, and suggested, as they did to Kaeding, that the Bedermans apply for a variance from the Pollution Control Board, which they did on July 2, 1971. Their petition for variance was set for hearing on August 20, 1971. However, on August 1, 1971, the Bedermans made an informal application for a building permit and on August 2, 1971, Lake Bluff wrote the sanitary district and on August 4, 1971, the sanitary district replied: "Please be advised that we are of the opinion that the

permit previously issued by the State of Illinois for the construction of sewers in Forest Cove Subdivision carried with it the right to connect with the sewer so constructed." It is to be noted at this point that the Illinois Sanitary Water Board had issued a permit to the Bedermans' predecessor in title, Nilles, on December 14, 1966, pursuant to which sanitary sewers were constructed, stubbed into each lot and connected to the Lake Bluff sewer system in 1967. The Bedermans were then informed by Lake Bluff that a permit would be issued and they would be entitled to connect. On August 24, 1971, Lake Bluff issued a permit to the Bedermans allowing the sewer connection. In the meantime, on August 5, 1971, the Pollution Control Board denied the Bedermans' petition for variance, although the same had been set for hearing on August 20, 1971. Bedermans did not receive a copy of the August 5, 1971, order denying their application for variance until August 11, 1971. On August 10, 1971, they had filed their motion to withdraw their petition for variance, and on August 31, 1971, the motion for withdrawal of the petition for variance was denied by the Pollution Control Board.

It is to be expressly noted that neither the Bedermans nor, in fact, any of the other parties named in Glovka's complaint before the Pollution Control Board were party to the March 31, 1971, order of the Pollution Control Board, with the exception of the Sanitary District.

In their petition the Bedermans have raised five issues: (1) that the sewer-ban order was not applicable to them; (2) that previously issued State permits authorizing sewer extensions were not superseded by the March 31, 1971, order of the Pollution Control Board; (3) that they have a vested right to connect to the sewer system; (4) that the Pollution Control Board's denial of the Bedermans' right to connect is the taking of private property without just compensation in violation of the Illinois and United States Constitutions, and (5) that the Pollution Control Board's prohibition imposed an arbitrary and unreasonable hardship on the Bedermans.

The Pollution Control Board in its opinion of February 17, 1972, recognized some of these issues and stated:

"Several legal issues emerge from the proliferation of documents filed: First, whether the sewer ban order operated against those who had previously received authority from the State or the District for the construction of sewers, or who stood in their position as successors in interest * * * whether the acts of individual respondents pursuant to the authorizations (of the Village of Lake Bluff and the Sanitary District) violated either the order of the Act, and in this respect, whether parties to the present proceeding who are not parties to the March 31 proceeding resulting

in the sewer ban Order, can, nevertheless, be found liable for aid-
ing, abetting or being accessory to its violation    *    *    *."

The Pollution Control Board went on to find:

> "The conduct of the Village of Lake Bluff in our judgment repre-
> sents a flagrant effort to circumvent the clear language of the sewer
> ban order. However, *its absence as a party to the original proceed-
> ing* unfortunately shields it from the imposition of penalties and
> *any cease and desist order.*" (Emphasis added.)

The Board considered that both the Bedermans and Kaeding were subject
to a cease-and-desist order, while the Village of Lake Bluff was not.

Apparently upon the basis that both the Bedermans and Kaeding had
filed petitions for a variance, the Pollution Control Board found that
while they, unlike Lake Bluff, were not party to the March 31, 1971,
order, but inasmuch as each of them had filed a petition for a variance
with the Pollution Control Board, such action gave the Pollution Control
Board jurisdiction to enter a cease-and desist-order against Bedermans
and Kaeding, but not against Lake Bluff. With this we do not agree.

Both the Bedermans and Kaeding were originally advised by Lake Bluff
that they were prohibited from hooking onto the existing sewer, and it
was suggested that they file a petition for a variance with the Pollution
Control Board. It was subsequently ascertained that the predecessors in
title had authorization from the State (in the case of Bederman, from the
Illinois Sanitary Water Board; and in the case of Kaeding, from the Illi-
nois Department of Health) to hook onto the existing sewers. As a result
of this, it is obvious that both the Bedermans and Kaeding believed that
their efforts to obtain variances from the Pollution Control Board were
not necessary. Either the pre-existing permits or authorizations were good
or they were not. The application for a variance, not based on the pre-
existing permits, should not prejudice or give the Pollution Control
Board the right to enter a cease-and-desist order, a right which it has
recognized that it does not have in the situation as to Lake Bluff, pointed
out above.

The Pollution Control Board in its February 17, 1972, order nonetheless
found:

> "With respect to respondents Kaeding and Bederman, who acted
> in defiance of our variation denials after having sought our as-
> sistance in obtaining permits. We direct them to disconnect any
> tie-ins they have made and to cease and desist any future tie-in or
> connection to the Lake Bluff sewer system without proper au-
> thority."

Further, the Pollution Control Board found as to other individual re-
spondents that

"We are not disposed on the facts of this case to invoke a doctrine of accessory liability in view of their absence as parties to the original sewer ban proceeding and the absence of an affirmative showing of bad faith on their part."

We believe that this case is governed by our decision in *Wachta v. Pollution Control Bd.* (1972), 8 Ill.App.3d 436, 289 N.E.2d 484. While the facts in *Wachta* are somewhat different, the principles enunciated therein apply to the case before us. It is true that perhaps more money was spent by the petitioners in that case in acquiring or improving their property than in the case before us. However, the Bedermans had paid $40,000 for the lot in question, and their predecessor in title, Nilles, in developing this particular subdivision, had spent approximately $5000 in setting up the sewer as to this lot, his cost being included in the purchase price. Neither the courts nor administrative bodies may set up a dollar figure as to what constitutes financial hardship. The hardship may be just as real to the property owner who pays $8500 for the lot as it is in the case of the party who pays $40,000 for his lot, or the subdivider who spends thousands of dollars developing his property, installing sewers upon State authorization, and then finds that a new State agency has attempted to revoke authorization of the prior proper State agency which has granted the authorization.

As in *Wachta*, we find that the Pollution Control Board in the case before us is estopped from withdrawing the prior sewer-connection permission granted to petitioners by the Sanitary Water Board. No useful purpose could be served in citing once again the cases relied upon in *Wachta v. Pollution Control Bd.*, which we adopt herein. Reference is made to that case as to the authority cited therein.

We therefore find that the Pollution Control Board was estopped from entering the cease-and-desist order as to the Bedermans. *Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill.2d 427, 447, 449, 220 N.E.2d 415.

In view of our finding, we do not deem it ncessary to consider the other allegations of the petitioners herein. We therefore reverse the order of the Pollution Control Board ordering petitioners to cease and desist any connection to the existing sewer.

Reversed.

T. MORAN, P. J., and RECHENMACHER, J., concur.