(Nos. 47121-23 co)

NORTH SHORE SANITARY DISTRICT, Appellee, v. THE POLLUTION CONTROL BOARD *et al.* (The Environmental Protection Agency, Appellant.)— THOMAS P. KAEDING, Appellee, v. THE POLLU- TION CONTROL BOARD *et al.* (The Environmental Protection Agency, Appellant.)—ALFRED N. BED- ERMAN *et al.*, Appellees, v. THE POLLUTION CONTROL BOARD *et al.* (The Environmental Pro- tection Agency, Appellant.)

*Opinion filed February 5, 1976.*

SCHAEFER and CREBS, JJ., took no part.

William J. Scott, Attorney General, of Springfield (Richard W. Cosby, Marvin I. Medintz, and Mary Schlott, Assistant Attorneys General, and Judy M. Miller (law student), of counsel), for appellant.

M. R. Conzelman, of Waukegan, for appellee North Shore Sanitary District.

Browning & Browning, of Chicago (Warren W. Browning, of counsel), for appellee Thomas P. Kaeding.

Leah S. Hamilton and Peter A. Flynn, of Chicago (Jenner & Block, of counsel), for appellees Alfred N. Bederman *et al.*

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

On March 31, 1971, the Illinois Pollution Control Board (hereafter, the Board), after finding in a proceeding before it (*League of Women Voters v. North Shore Sanitary District,* 1 Ill. P.C.B. Op. 369) that practices in the North Shore Sanitary District (the District) were causing pollution of Lake Michigan, entered an order

prohibiting the District from allowing "any additions to present sewer connections, or new sewer connections, to its facilities until the District can demonstrate to the Board that it can adequately treat the wastes from those new sources ***." (1 Ill. P.C.B. Op. at 396.) This order, which became commonly known as the "sewer ban," has been the source of much litigation aside from the three cases we are considering here. (See, *e.g., North Shore Sanitary District v. Pollution Control Board,* 55 Ill.2d 101; *Lake County Contractors Association v. Pollution Control Board,* 54 Ill.2d 16; *Seegren v. Environmental Protection Agency,* 8 Ill. App. 3d 1049; *Wachta v. Pollution Control Board,* 8 Ill. App. 3d 436.) The question we will examine here, which arises from the order, concerns the rights of persons who had been issued permits to connect with the District's sewage facilities before the "sewer ban" went into effect but who had not made such connection prior to the date of the Board's prohibiting order.

It was common practice for builders and developers who worked prior to 1971 in the area served by the District to obtain sewer permits for their entire development long before commencing construction. As the building progressed connections to the District's facilities would be made. In some instances the developer would not make the connection himself. He would sell an unimproved lot and the buyer would connect to the District's system when his house had been built. Consequently, as of March 31, 1971, a number of persons held permits by the Illinois Environmental Protection Agency (Agency) or by its predecessor, the Sanitary Water Board, to "install and operate" sewage facilities, but had not yet connected their systems. At the time the "sewer ban" took effect, section 49(d) of the Environmental Protection Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1049(d)) provided:

> "All orders entered, permits or certifications granted, and pending proceedings instituted by the Air Pollution Control Board, the Sanitary Water Board, or the Depart-

ment of Public Health relating to subjects embraced within this Act shall remain in full force and effect until superseded by actions taken under this Act."

The Board's order of March 31, 1971, made no mention of unused permits which had been issued prior to the order. None of the holders of the unused permits were made parties to or given notice of the proceedings which resulted in the "sewer ban," nor were they notified following the entering of the order of March 31, 1971, by the Board or the Agency that their permits had been either revoked or suspended.

When the "sewer ban" went into effect, the District took the position, so far as relevant here, that the unused permits were not revoked or suspended by the order. The District consequently authorized a number of persons to connect with its sanitary sewer system after March 31, 1971. No claim has been made that the District allowed any person without a preexisting permit to hook up subsequent to March 31, 1971. Thomas P. Kaeding had consulted officials of the village of Lake Bluff (Village) and of the District in February of 1971 to learn if he would be able to connect from a lot he was preparing to purchase to the Village's sewer system. (The Village's system emptied into the District's, and the Village, before approving a request to connect to its system, had to obtain the District's approval.) After receiving an approval from the Village and from the District's general manager, Kaeding and his wife contracted on March 16, 1971, to purchase the lot for $8,500, and in April of 1971 the lot was conveyed to them. A village sewer line had been laid in the street adjoining the lot, and Kaeding proposed to "stub-in" to the line. Mr. and Mrs. Alfred Bederman purchased a lot in May of 1970 for $40,000. Of this amount $5,000 represented the original developer's cost of installing a sanitary sewer system which ran up to the lot line so as to permit a "stub-in" from a building which might be constructed on the lot. Kaeding and the

Bedermans were later denied permission by the Village and the District to stub-in to the sewage systems because of the Board's order of March 31, 1971, and because it appeared no permit for either lot had been issued prior to the date of that order. Both parties thereafter sought variances from the Board that would allow them to hook up. It was then discovered that the predecessors in title to the lots of Kaeding and the Bedermans had received permits to connect to the sewer systems from the Sanitary Water Board long before the "sewer ban" went into effect. Upon learning this, the Village and the District authorized Kaeding and the Bedermans to hook up their respective properties to the Village and District sewer systems. The petitions for variance which they had filed were later denied by the Board.

On September 10, 1971, Richard Glovka, a property owner within the District, filed a complaint with the Board (Ill. Rev. Stat. 1971, ch. 111½, par. 1031) charging the Bedermans, Kaeding, the Village and the District, and others who are not involved here, with violating the "sewer ban" and violating the Environmental Protection Act (hereafter, the Act) (Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*). The Board handed down an order and administrative opinion on February 17, 1972, finding that none of the defendants had violated the Act. However, the Board ordered Kaeding and the Bedermans "to disconnect any tie-ins they have made and to cease and desist [from making] any future tie-in or connection to the Lake Bluff sewer system without proper authority." (3 Ill. P.C.B. Op. at 654.) Too, the Board, after declaring that the "sewer ban" had been applicable to prior and unused permits, ordered the District to desist from allowing any further connections and ordered the District to revoke all authorizations to connect it had given since March 31, 1971. It also ordered the District to pay a fine of $5,000. Kaeding and the Bedermans and the District separately appealed to the appellate court. The right of appeal from the Board is

directly to the appellate court under section 41 of the Act. (Ill. Rev. Stat. 1973, ch. 111½, par. 1041.) That court reversed the Board and held that the Board was estopped from revoking the prior sewer connecting permits which had been granted by the Sanitary Water Board (the Board's predecessor) to the Bedermans and Kaeding or their predecessors in title. (22 Ill. App. 3d 31; 22 Ill. App. 3d 36.) On the District's appeal, the court held that the holders of the preexisting permits had been denied due process of law because they had not been made parties to or given notice of the proceedings which resulted in the "sewer ban," and, therefore, held the fine imposed on the District was improper. The court held too that the Board could not require the District to prohibit preexisting permit holders from making sewage connections. (22 Ill. App. 3d 28.) We granted the Agency's petitions for leave to appeal in all three cases and consolidated the appeals for argument and decision.

One of the Agency's contentions to us is that the "sewer ban" clearly prohibited holders of outstanding and unused permits from using the District's facilities after March 31, 1971. We do not consider the claim supportable. The language of the order does not refer to the holders or their unused permits. In the proceeding before the Board there was no discussion of such a prohibition, much less any consideration of its reasonableness or effect. We cannot view the order as directed against and intended to reach the holders of unused permits. The member of the Board who drafted the opinion which accompanied the "sewer ban" informed the District's manager a short time after the order went into effect that it did not revoke preexisting permits. To be considered, too, is the language of section 49(d) of the Act (Ill. Rev. Stat. 1971, ch. 111½, par. 1049(d)), which, as we noted above, provides that all "permits *** [issued by a predecessor of the Board] shall remain in full force and effect until superseded by actions taken under this Act." The proceeding before the Board

and the Board's order do not show that the rights of the holders of permits issued by the predecessor State agencies were to be affected.

Even if it were to be assumed that the Board's March 31, 1971, order was intended to reach and revoke preexisting permits, the Board's order would. have been invalid as to the holders of the permits. Under the circumstances here the holders would have been entitled to notice and an opportunity to be heard before rights necessary for the reasonable use of their property could be terminated or substantially abridged. (*Ellis v. Illinois Commerce Com.*, 44 Ill.2d 438, 446; *Brown v. Air Pollution Control Board*, 37 Ill.2d 450, 454; *People v. Scott*, 326 Ill. 327, 353; *Bell v. Burson*, 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586; *Wisconsin·v. Constantineau*, 400 U.S. 433, 27 L. Ed. 2d 515, 91 S. Ct. 507; *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011; *see generally* 1 K. Davis, Administrative Law Treatise, sec. 7.02 (1958).) None of the holders of unused permits were joined as parties or given notice of the proceedings from which the "sewer ban" arose. The Board in its administrative opinion of February 17, 1972 (3 Ill. P.C.B. Op. 647, 654) showed its awareness that there was an impediment to taking action against the alleged violators of the sewer ban, when it stated: "The difficulty in imposing sanctions against them [that is, all of the named defendants except the District] arises from the fact that they were not parties to the original proceeding." The Board was without authority to enter an order to affect the rights of the permit holders, including Kaeding and the Bedermans, who were not given notice and an opportunity to be heard.

We would note parenthetically that the legislature amended section 33 of the Act (Ill. Rev. Stat. 1973, ch. 111½, par. 1033) on June 27, 1971, to impose on the Board the responsibility to give notice and provide opportunity to be heard. The amendment provides:

"Whenever a proceeding before the Board may affect

the right of the public individually or collectively to the use of community sewer or water facilities provided by a municipally owned or publicly regulated company, the Board shall at least 30 days prior to the scheduled date of the first hearing in such proceeding, give notice of the date, time, place, and purpose of such hearing, by public advertisement in a newspaper of general circulation in the area of the State concerned. The Board shall conduct a full and complete hearing into the social and economic impact which would result from restriction or denial of the right to use such facilities and allow all persons claiming an interest to intervene as parties and present evidence of such social and economic impact."

In defense of its order of February 17, 1972, with respect to the District, the Board argues that, even if the order was not enforceable against the individual holders of permits because they were not given notice and an opportunity to be heard, the District cannot assert the rights of these persons. However, the District does not have to assert the rights of others. The Board simply cannot be allowed to do by indirection what it cannot do directly. As we have seen, the Board could not, relying on its "sewer ban," have extinguished or limited the rights of Kaeding and the Bedermans by ordering them to disconnect from the sewage system.

If the Board's orders to the District to revoke the connections the District had authorized for Kaeding and the Bedermans were to be upheld, the result would be that, by ordering the District to disconnect, the Board could effectively extinguish or limit the rights of those permit holders without notice to them or a hearing. This result would be incongruous, considering we are holding that the Board's order to Kaeding and the Bedermans was invalid because *inter alia* they were entitled to notice and an opportunity to be heard. Similarly, the fine against the District cannot be upheld. Were it upheld it would require a holding that though the unused rights of Kaeding and the Bedermans were unimpaired by the Board's "sewer ban"

the District was in violation of the Act when it treated the unused rights unimpaired by the Board's order.

For the reasons stated, the judgments of the appellate court are affirmed.

*Judgments affirmed.*

SCHAEFER and CREBS, JJ., took no part.