THE CITY OF LAKE FOREST, Appellant, v. THE POLLUTION CONTROL BOARD *et al.*, Appellees.

Second District No. 2—85—0541

Opinion filed August 28, 1986.

Thomas H. Compere, of Lake Forest, and M. R. Conzelman and Anne R. Conzelman, both of Conzelman, Schultz, Snarski & Mullen, of Waukegan, for appellant.

Thomas E. Greenland, of Lake Forest, for appellees.

Thomas W. Kelty, of Pfeifer & Kelty, P.C., of Springfield, for *amicus curiae*.

PRESIDING JUSTICE NASH delivered the opinion of the court:

The city of Lake Forest appeals for review of an administrative decision of the Pollution Control Board (PCB) pursuant to Supreme Court Rule 335 (87 Ill. 2d R. 335). The primary issue which we consider is whether the PCB was authorized to order Lake Forest to repeal an ordinance it has adopted.

Thomas E. Greenland, a citizen of Lake Forest who appeared *pro se* before the PCB and in this court, filed a complaint before the PCB in which it was alleged that Lake Forest had violated sections 9(a) and 9(c) of the Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 1009(a), (b)) and also certain air pollution regulations adopted by the PCB. The basis for the claimed violations was the enactment of an ordinance by the city council of Lake Forest which al-

lowed, under specified conditions, the burning of leaves within the municipal boundaries. The complaint alleged that the open burning of leaves thus permitted caused air pollution within the city in violation of the Environmental Protection Act and the rules and regulations of the PCB and sought injunctive and other relief from the PCB.

Lake Forest sought dismissal of the complaint before the PCB, alleging *inter alia* that the PCB had no authority to declare a municipal ordinance to be in violation of a statute or PCB rules and regulations and that it lacked authority to enjoin the open burning of leaves within a city. The motion was denied by the PCB and the complaint was referred to a hearing officer who held evidentiary hearings. The PCB subsequently considered that record and found Lake Forest to be in violation of sections 9(a) and 9(c) of the Environmental Protection Act by reason of the adoption of its leaf-burning ordinance and ordered the city to cease and desist from further violations of the Act.

Lake Forest contends (1) that the PCB, in effect, declared its ordinance to be invalid and ordered appellant to repeal it, and has no authority to do so; (2) the mere existence of the ordinance cannot be considered as a violation of the Environmental Protection Act; and (3) that the PCB erred in considering hearsay evidence and facts outside the record of this case in making its decision.

The record discloses that by an ordinance of the city council of Lake Forest adopted on October 13, 1984, all open fires are prohibited within the city except that the burning of dry leaves is permitted between October 15 and December 15 and between April 1 and May 15 during daylight hours. Burning of leaves is permitted in two wards of the city on even numbered days and the other two wards on odd numbered days in those periods. All burning is prohibited when winds exceed 10 miles per hour or inversion conditions exist, and leaf burning is not allowed within 20 feet of any building and must be supervised by a person 16 years of age or older. On October 17, 1984, appellee, Thomas Greenland, filed the earlier described complaint against the city of Lake Forest with the PCB pursuant to section 31(b) of the Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1031(b)). The following evidence was received by the hearing officer and considered by the PCB in rendering its decision.

Bob Ryan, a physician who resides in Lake Forest, testified that he and his children suffer from asthmatic conditions which are aggravated by leaf smoke, making it difficult to breathe. Ryan stated that Lake Forest is heavily wooded and he has over a hundred trees on his own property. He stated that he is also adversely affected by leaves

burned in other municipalities, by automobile exhaust and wood smoke. Patricia Ryan testified their children miss five to six weeks of school in the fall and suffer hearing losses when their allergies and asthma are aggravated by leaf smoke. Both witnesses stated the present ordinance was an inadequate solution to the problem, and that all leaf burning should be prohibited.

Anthony Daddono, who resides in Lake Forest and is a physician specializing in allergies, testified that wheat pollens and molds which are generated in leaf burning cause asthmatic persons to have difficulty in breathing. The smoke itself is irritating to anyone with a respiratory disease. He stated that 10 to 12% of the population suffer from a lower-respiratory allergy which would be aggravated to some extent by leaf smoke. Daddono agreed that people with allergies suffer more in the fall, in any event, as the molds on leaves and grass can be stirred up by simply cutting the grass, and that persons are also adversely affected by wood smoke. He also stated residents living in northern Lake Forest could be affected by the leaf burning which occurs in neighboring Lake Bluff.

Vito Lubes, another Lake Forest resident, testified he cannot use his porch when people burn leaves in his neighborhood and must keep his house and car closed. He stopped burning leaves himself two years previously, and feels he is breathing better air. Lubes testified his respiratory problems are aggravated by leaf burning and cigarette smoke.

Rita Kawula, a part-time nurse, testified her two asthmatic children can't attend school or participate in sports on days when leaves are burned and they therefore mulch their leaves.

The city manager of Lake Forest, John Fischbach, was called by both parties as a witness. Fischbach testified the estimated 1984 population of Lake Forest was 16,029 and that there are approximately 30,000 trees in the city. Approximately 17% of the population burn their leaves, while 45% use landscape services and 38% use the city's refuse collection system with leaf bags purchased from the city. The city has a full-time forestry staff and a tree planting and preservation program.

In 1984, Fischbach undertook two studies of leaf disposal and burning. The short-term study led to the ordinance in question, which generally restricts leaf burning, and the second study focused on alternative methods of leaf disposal. Approximately 44,500 cubic feet of leaves are generated each fall and the city currently disposes of 21,288 cubic feet through its leaf-bag program. During the fall of 1984, the city picked up 30 to 40% additional bags than in previous

years. Fischbach further testified his study recommends a ban on leaf burning and estimated the increase cost to the city to be $88,530 in the first year, assuming the same number of people who currently use private scavengers and landscape services continue to do so.

Appellee Greenland also offered in evidence, without other foundation, a copy of a study made under the auspices of the Illinois Institute of Natural Resources entitled "Advisory Report on the Potential Health Effects of Leaf Burning," which was admitted over the objection of Lake Forest that it was hearsay. Lake Forest offered no evidence relating to the effect of leaf burning on the environment.

In its opinion and order, the PCB found that leaf smoke contains contaminants and that by adoption of the ordinance that Lake Forest "caused or allowed" the discharge of such contaminants in violation of section 9(a) of the Environmental Protection Act. It also found that Lake Forest "caused or allowed" the open burning of refuse in violation of section 9(c) of the Act. The PCB further determined that Lake Forest was not in violation of open-burning (35 Ill. Admin. Code 237.102) and burning-of-landscape-refuse (35 Ill. Admin. Code 237.120(c)) regulations enacted by the PCB which it found to be invalid as not authorized by the legislature.

In fashioning its remedy, the PCB noted that while it was not authorized to grant the injunctive relief requested by appellee Greenland, it could issue a cease and desist order pursuant to section 33(b) of the Environmental Protection Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1033(b)) and need not find the ordinance to be invalid in order to resolve the matter. Accordingly, the PCB ordered that Lake Forest cease and desist from further violations of the Act, and this appeal followed.

The city of Lake Forest and *amicus curiae*, the Illinois Municipal League, contend first that the Pollution Control Board has no authority under the Environmental Protection Act to declare a municipal ordinance to be invalid and, in effect, to order that it be repealed by the city. The appellee, Thomas E. Greenland, asserts that the PCB specifically did not declare the municipal ordinance to be invalid, and that its cease and desist order was a necessary exercise of the PCB's power under the Environmental Protection Act to carry out the purpose of the Act to protect the environment.

In support of its argument, Lake Forest cites *North Shore Sanitary District v. Pollution Control Board* (1976), 62 Ill. 2d 385, 342 N.E.2d 376, in which the PCB prohibited the sanitary district from allowing "any additions to present sewer connections, or new sewer connections, to its facilities" until the district demonstrated it could

adequately treat the new wastes. On review, our supreme court held that the sewer ban was invalid as to holders of sewer connection permits who had received them before the ban went into effect, because those persons had not been joined as parties or been given notice of the board proceedings. Finding the PCB lacked authority to affect the rights of parties not before it, the court noted, "[t]he Board simply cannot be allowed to do by indirection what it cannot do directly." 62 Ill. 2d 385, 392, 342 N.E.2d 376.

Appellee does not attempt to distinguish the cease and desist order in this case from a determination of invalidity, but argues that the order was a necessary and proper exercise of authority under the Environmental Protection Act, which gives the Pollution Control Board power to "determine, define and implement the environmental control standards applicable" (Ill. Rev. Stat. 1983, ch. 111½, par. 1005(b)); "conduct hearings upon complaints charging violations of this Act or of regulations thereunder" (Ill. Rev. Stat. 1983, ch. 111½, par. 1005(d)); and "issue and enter such final order, or make such final determination, as it shall deem appropriate under the circumstances" (Ill. Rev. Stat. 1983, ch. 111½, par. 1033(a)). Such orders may include a direction to cease and desist from violations of the Act and the imposition of civil penalties (Ill. Rev. Stat. 1983, ch. 111½, par. 1033(b)), and the courts have upheld the delegation of these powers to the Board. (See *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 184, 311 N.E.2d 146; *Meadowlark Farms, Inc. v. Pollution Control Board* (1974), 17 Ill. App. 3d 851, 856, 308 N.E.2d 829; *Ford v. Environmental Protection Agency* (1973), 9 Ill. App. 3d 711, 718, 292 N.E.2d 540.) Appellee argues that the PCB thus has direct authority to issue a cease and desist order to a violator of the Act and that it is established that where there is an express grant of statutory authority to an administrative agency, there is also a corresponding grant of power to do all that is reasonably necessary to exercise that authority. (*City of Chicago v. State & Municipal Teamsters* (1984), 127 Ill. App. 3d 328, 336, 468 N.E.2d 1268; *Ray v. Illinois Racing Board* (1983), 113 Ill. App. 3d 510, 513, 447 N.E.2d 886.) On this basis, appellee argues that the PCB acted within the authority granted by the legislature in ordering Lake Forest to cease and desist from further violations of the Act.

In this case, the PCB has issued a cease and desist order against the city of Lake Forest with which the city can comply only by repealing its leaf-burning control ordinance. This is not a case in which the municipal corporation is itself engaged in an activity offensive to the environment. (*Cf. City of Waukegan v. Pollution Control Board*

(1974), 57 Ill. 2d 170, 311 N.E.2d 146.) Here, by its ordinance, the city sought to regulate the disposal of leaves by its residents, as the city is authorized to do by sections 11—19—2(2) and 11—19—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, pars. 11—19—2(2), 11—19—5). If the PCB is authorized by means of a cease and desist order to require the repeal of a municipal ordinance it considers to be in violation of the Environmental Protection Act, the PCB may well consider that it is authorized to require enactment by a municipality of ordinances deemed appropriate to environmental protection.

■ We have considered the powers granted to the PCB by the legislature to carry out its responsibilities and find no arguable authority permitting it to interfere in a purely governmental function as it has done in this case. In our view, the remedy fashioned by the PCB was misdirected and premised upon an assumption of authority which the legislature has not sought to delegate to the PCB. See *People v. Pollution Control Board* (1984), 129 Ill. App. 3d 958, 962, 473 N.E.2d 452; *People v. Brumfield* (1977), 51 Ill. App. 3d 637, 642-43, 366 N.E.2d 1130, *appeal denied* (1977), 66 Ill. 2d 639.

The conclusion we have reached finds direct support in the Environmental Protection Act, which establishes standards with which the PCB must comply before it may adopt regulations restricting the burning of landscape wastes, which includes leaves. (Ill. Rev. Stat. 1983, ch. 111½, par. 1003(uu).) Section 10 provides:

> "The Board may not adopt any regulation banning the burning of landscape waste through the State generally. The Board may, by regulation, restrict or prohibit the burning of landscape waste within any geographical area of the State if it determines based on medical and biological evidence generally accepted by the scientific community that such burning will produce in the atmosphere of that geographical area contaminants in sufficient quantities and of such characteristics and duration as to be injurious to humans, plant, or animal life, or health."
> Ill. Rev. Stat. 1985, ch. 111½, par. 1010.

It is apparent the PCB may not by its regulations prohibit the burning of leaves and other landscape wastes throughout the State, but may do so within limited areas if the requisite hearing and evidentiary standards are met. By its order in the present case the PCB has avoided the statutory standards and apparently seeks to require a ban on leaf burning in the city of Lake Forest by an indirect and unauthorized means. We conclude the PCB order to cease and desist, as directed to the Lake Forest ordinance, exceeded its authority and must be reversed on that grounds.

Lake Forest also contends that its leaf burning ordinance does not violate sections 9(a) and 9(c) of the Environmental Protection Act. (Ill. Rev. Stat. 1983, ch. 111½, pars. 1009(a), (c).) It first argues that the burning of leaves cannot be considered a violation of section 9(c), which provides, "[n]o person shall *** cause or allow the open burning of refuse." The Act defines "refuse" as "waste" (Ill. Rev. Stat. 1983, ch. 111½, par. 1003(w)), and defines "waste" as "any garbage, sludge from a water treatment plant, water supply treatment plant, or air pollution facility or other discarded material." (Ill. Rev. Stat. 1983, ch. 111½, par. 1003(*ll*).) In its order, the PCB determined that the phrase "other discarded material" included leaves and that Lake Forest violated this section by "allowing" them to be burned within the city.

 █ In construing a statute, the more specific terms prevail over the more general and aid in the construction of the latter. (*People v. Singleton* (1984), 103 Ill. 2d 339, 345, 469 N.E.2d 200; *Board of Education v. Carter* (1983), 119 Ill. App. 3d 857, 861-62, 458 N.E.2d 50, *appeal denied* (1984), 99 Ill. 2d 527.) The doctrine of *ejusdem generis* states that when a statutory clause specifically describes several classes of persons or things and then includes "other persons or things," the word "other" is interpreted to mean "other such like." (*Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton* (1985), 105 Ill. 2d 389, 396, 475 N.E.2d 536; *St. John's Evangelical Lutheran Church v. Kreider* (1977), 54 Ill. App. 3d 257, 259, 369 N.E.2d 370.) Here, in determining the meaning of "other discarded materials," we must look to the examples provided by the legislature, *i.e.*, garbage and sludge. We cannot say that leaves, which naturally grow and fall from trees, are of the same nature as garbage or sludge which is generated and discarded by people. We also note the legislature specifically included leaves in its definition of "landscape waste" in the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1003(uu)) as a separate category of waste, indicating a legislative intent that leaves do not come within the general definition of "waste" under section 3(*ll*) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1003(*ll*)).

We conclude that the burning of leaves is not prohibited by section 9(c) of the Environmental Protection Act (Ill. Rev. Stat. 1985, ch. 111½, par 1009(c)) and that provision was improperly applied by the PCB in this case.

Lake Forest further contends that its ordinance did not violate section 9(a) of the Act, which provides, "[n]o person shall *** cause or threaten or allow the discharge or emission of any contaminant *** so as to cause air pollution in Illinois." Ill. Rev. Stat. 1985, ch. 111½,

par. 1009(a).

■■ Lake Forest first argues that the mere existence of an ordinance cannot be considered as a violation of section 9(a), and we agree. The existence of the ordinance permitting leaf burning cannot properly be equated, as respondent urges, with other acts such as a municipal program of leaf disposal by burning or an ordinance requiring residents to burn leaves. Appellee relies upon cases which hold that a person possessing sufficient control to prevent pollution may be held liable under the Act (*Meadowlark Farms, Inc. v. Pollution Control Board* (1974), 17 Ill. App. 3d 851, 860-61, 308 N.E.2d 829; *Bath, Inc. v. Pollution Control Board* (1973), 10 Ill. App. 3d 507, 510, 294 N.E.2d 778, *appeal denied* (1973), 54 Ill. 2d 591.) However, these cases involved the owners of pollution sites and are not applicable here. We conclude that the mere presence of the ordinance did not violate section 9(a) of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1009(a)).

Lake Forest also contends that the PCB erred in construing the last paragraph of section 9 of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1009) as a legislative mandate that all burning of landscape wastes, including leaves, was prohibited in counties having a population over 200,000 (now 400,000 under Public Act 84—705, effective Jan. 1, 1986). After so finding in its order, the PCB reasoned that Lake Forest violated the statute when, by means of its ordinance, the city permitted leaf burning. The last paragraph of section 9 provides:

> "This section shall not limit the burning of landscape waste upon the premises where it is produced or at sites provided and supervised by any unit of local government, except within a county having a population of more than 200,000." Ill. Rev. Stat. 1983, ch. 111½, par. 1009.

■■ As earlier noted, landscape wastes include leaves, and we do not agree with the conclusion of the PCB that the legislature intended to thus ban all leaf burning in counties over 200,000 in population. This section must be read in conjunction with section 10 of the Act (Ill. Rev. Stat. 1983, ch. 111½, par. 1010) by which the PCB is authorized, under the procedural and evidentiary standards there described, to adopt regulations prohibiting or regulating the burning of landscape wastes in specified geographical areas of the State. It is apparent that the legislature by these provisions intended that the burning of leaf and other landscape wastes shall be permitted upon the premises where it is produced by nature, or at sites provided and supervised by local governmental units. However, the legislature has excepted from such permissive burning those areas within high

population counties in which the PCB has determined, by regulation, such burning ought to be restricted, and the PCB has not done so.

In view of our disposition of the issues discussed we need not consider other arguments of the parties.

Accordingly, the order of the Pollution Control Board is reversed.

Reversed.

REINHARD and UNVERZAGT, JJ., concur.