No. 2--07--0213      Filed: 3-11-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| NORTHERN ILLINOIS SERVICE COMPANY, | ) ) ) | On Petition for Administrative Review from the Illinois Pollution Control Board. |
| Petitioner, | ) ) | |
| v. | ) ) | IEPA No. 567--04--AC |
| THE ENVIRONMENTAL PROTECTION AGENCY and THE POLLUTION CONTROL BOARD, | ) ) ) ) ) | |
| Respondents. | ) | |

JUSTICE CALLUM delivered the opinion of the court:

In November 2004, the Illinois Environmental Protection Agency (the Agency) filed an administrative citation against Northern Illinois Service Company (NISC), charging that NISC violated sections 21(p)(1) and 21(p)(7) of the Illinois Environmental Protection Act (the Act) (415 ILCS 5/21(p)(1), (p)(7) (West 2004)).  NISC petitioned for administrative review before the Illinois Pollution Control Board (the Board).  The Board found that NISC violated both sections of the Act and imposed a statutorily required penalty of $3,000 plus the hearing costs of the Agency and the Board.  NISC seeks judicial review (415 ILCS 5/41 (West 2004)) of the Board's order with respect to the violation of section 21(p)(1).  NISC argues that the Board erred in finding that it engaged in the open dumping of waste resulting in litter by piling uprooted, dead trees on its property.  For the reasons that follow, we affirm.

BACKGROUND

NISC is an excavation and demolition contractor that owns a piece of property commonly known as the Roscoe Quarry. In the course of business, NISC uses sand fill from the Roscoe Quarry to complete its projects, and it also hauls dirt and similar material back to the quarry from other excavations. On July 15 and October 4, 2004, Agency field inspector Kaare Jacobsen inspected the quarry in response to a complaint alleging that NISC had been openly dumping construction debris and landscape waste at the quarry. During the inspections, Jacobsen observed an estimated 9,700 cubic yards of uprooted, dead trees piled 10 to 13 feet high in the north section of the quarry. He also observed concrete debris with protruding rebar and pieces of steel conduit piled at the quarry.

On November 22, 2004, the Agency filed an administrative citation with the Board, charging that NISC violated sections 21(p)(1) and 21(p)(7) of the Act, which prohibit:

"the open dumping of any waste in a manner which results in any of the following occurrences at the dump site:

(1) litter;

\* \* \*

(7) deposition of:

(i) general construction or demolition debris as defined in Section 3.160(a) of this Act; or

(ii) clean construction or demolition debris as defined in Section 3.160(b) of this Act." 415 ILCS 5/21(p)(1), (p)(7) (West 2004).

NISC filed an amended petition for review on February 7, 2005, contesting the finding with respect to section 21(p)(1) of the Act, on the grounds that dead trees are not litter. A hearing on the

petition took place on April 20, 2006, at which the following facts were adduced. Jacobsen testified that during his inspections of the Roscoe Quarry on July 15 and October 4, 2004, he observed an estimated 9,700 cubic yards of "landscape debris." The pile of landscape debris was about "ten to 13 feet high," and it contained "uprooted trees, also trees that have been cut." The trees were laid in a central pile ringed by an access road, with another ring of dead trees circling the road. He stated that the pile looked like it had "been placed there for a lengthy period of time." When asked whether it occurred to him that the pile of dead trees had potential value as mulch, Jacobsen responded that it had not, because "the way it was on the property, it looked like it was open dump and it is going to be left there for a lengthy period of time." Jacobsen explained that "[t]here could have been a market value for it. But at the time of the inspection, it was considered open dump material." He determined that the landscape material was waste and not garden mulch, based on "[t]he way the trees were just laying [sic] there. They are just--the way they were positioned. They were not processed. They were just laid there to rot." He saw no evidence of any processing of the trees. He estimated that the trees had been there for "probably two to three years," and he saw no change in the position or condition of the tree pile from his first inspection to his second inspection.

NISC presented testimony from Ronald Foss and Wayne Klinger. Foss, the owner of a local landscaping business and retail garden center, testified that he worked for NISC for two to three years in the late 1980s and early 1990s. Foss had observed the tree pile at the Roscoe Quarry. He said that it "looked like they had been knocked over, piled up." In Foss's opinion, the trees at the Roscoe Quarry could be "ground up into mulch."

Klinger, the president of NISC, testified that he purchased the Roscoe Quarry about 10 years ago. At that time, there was a "pile of old trees" on the property. According to Klinger, the tree pile

observed by Jacobsen derived from three sources. Twenty to twenty-five percent of the trees were present in the pile at the quarry when NISC purchased it. Fifty percent of the trees had been uprooted by NISC in the course of excavating for fill at the quarry. The remainder were "stragglers," i.e., single trees uprooted by NISC from other excavation sites. These stragglers were taken to the quarry because they were not disposable in the usual fashion. When NISC is hired to do an excavation job, NISC hires a tree service company to take the trees out, but "they can't come out for one tree." NISC no longer brings stragglers to the Roscoe Quarry.

On September 21, 2006, the Board entered an interim opinion and order, and on January 26, 2007, the Board issued its final opinion and order, finding that NISC violated sections 21(p)(1) and 21(p)(7) of the Act. The Board found that the trees constituted "landscape waste," explaining that "since the definition [of landscape waste] includes tree limbs, it should also be read as to generally include entire trees when they are uprooted and accumulated in the manner [NISC] has maintained them at the Roscoe Quarry." Citing an earlier decision of the Board (American Tree Service, Inc., v. Illinois Environmental Protection Agency, Ill. Pollution Control Bd. Op. Case No. 1994-043, slip op. at 16 (December 14, 1994)), the Board stated that "landscape waste" is a subset of "waste." The Board found that the trees also qualified as "other discarded materials" within the Act's definition of waste because the trees had been uprooted and piled at the site, as opposed to having accumulated by a natural process.

After concluding that NISC caused the open dumping of waste at the Roscoe Quarry, the Board next determined that the waste resulted in litter, which is defined in the Litter Control Act as "any discarded, used or consumed substance or waste" or "anything else of an unsightly or unsanitary

nature, which has been discarded, abandoned or otherwise disposed of improperly." 415 ILCS 105/3(a) (West 2004).

The Board imposed a statutory penalty of $3,000 and assessed hearing costs for the Board and Agency of $672.25. On February 23, 2007, NISC timely petitioned for review of the Board's order with respect to only the violation of section 21(p)(1).

ANALYSIS

Initially, we address the parties' dispute over the appropriate standard of review. NISC argues that the Board's decision should be reviewed de novo, while the Agency claims that the Board's decision may be overturned only if it is against the manifest weight of the evidence. We observe that section 41(b) of the Act appears to support the Agency's position. See 415 ILCS 5/41(b) (West 2004) ("Any final order of the Board under this Act *** shall be invalid if it is against the manifest weight of the evidence"). However, this case involves solely a question of law: whether the uprooted, dead trees on NISC's property fall within the definition of waste under the Act. The facts are undisputed; NISC does not deny the presence of uprooted and dead trees at the site, and it acknowledges the source of the tree pile. NISC argues only that the trees are not waste because they are not "landscape waste" or any type of "other discarded material." Case law dictates that, in such a case, the reviewing court generally accords some deference to an agency's interpretation of the statute it is charged with administering, but its interpretation is not binding on the court and will not be upheld if erroneous. National Environmental Services Corp. v. Pollution Control Board, 212 Ill. App. 3d 109, 112 (1991). We need not definitively resolve this issue, as we would affirm on any standard of review.

As already noted, section 21(p)(1) of the Act prohibits "the open dumping of any waste in a manner" that results in "litter." 415 ILCS 5/21(p)(1) (West 2004). To prove a violation of this section, the Agency must first prove that NISC caused or allowed open dumping of waste. 415 ILCS 5/21(p) (West 2004). "Open dumping" is "the consolidation of refuse from one or more sources at a disposal site that does not fulfill the requirements of a sanitary landfill." 415 ILCS 5/3.305 (West 2004). "Refuse" is defined as "waste." 415 ILCS 5/3.385 (West 2004).

"Waste" is defined as:

> "any garbage, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility or other discarded material, including solid, liquid, semi-solid, or contained gaseous material resulting from industrial, commercial, mining and agricultural operations, and from community activities." 415 ILCS 5/3.535 (West 2004).

"Landscape waste" is defined as:

> "all accumulations of grass or shrubbery cuttings, leaves, tree limbs and other materials accumulated as the result of the care of lawns, shrubbery, vines and trees." 415 ILCS 5/3.270 (West 2004).

The Board has previously held that "landscape waste" is a subset of "waste." American Tree Service, slip op. at 16.

Here, the Board found that the trees were waste for two different reasons. The Board found (1) that the trees qualified as "other discarded material" within the definition of "waste," and (2) that the trees qualified as "landscape waste." NISC disagrees with both conclusions. Resolution of the issue requires us to employ the familiar principles of statutory construction.

The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency, 215 Ill. 2d 219, 237-38 (2004). The language of the statute is the best indication of legislative intent. Alternate Fuels, 215 Ill. 2d at 238. When the language of a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction. Alternate Fuels, 215 Ill. 2d at 238. However, all words and phrases must be interpreted in light of other relevant provisions of the statute and must not be construed in isolation. Alternate Fuels, 215 Ill. 2d at 238.

NISC contends that the trees do not qualify as "other discarded material" within the definition of "waste." We disagree. In Alternate Fuels, our supreme court considered whether containers shredded for alternate fuel were "discarded material." If so, the facility that received and processed the containers would be considered a pollution control facility and would be required to secure a permit. Alternate Fuels, 215 Ill. 2d at 223. In applying the above principles of statutory construction, the court noted that the Act does not define the term "discarded" and, thus, it turned to section 3.380 of the Act, which uses the term, for guidance. Upon doing so, the court concluded that the term was unambiguous. See Alternate Fuels, 215 Ill. 2d at 242.

Section 3.380 of the Act defines " '[r]ecycling, reclamation, or reuse' " as " 'any process by which materials that would otherwise be disposed of or discarded are collected, separated or processed and returned to the economic mainstream in the form of raw materials or products.' " Alternate Fuels, 215 Ill. 2d at 239-40, quoting 415 ILCS 5/3.380 (West 2002). The court noted that "materials" are divided into two subcategories: (1) materials that are " 'discarded' "; and (2) " 'materials that would otherwise be disposed of or discarded [which] are collected, separated or

processed and returned to the economic mainstream in the form of raw materials or products.' "
Alternate Fuels, 215 Ill. 2d at 239-40, quoting 415 ILCS 5/3.380 (West 2002). The court stated:

"While the legislature has not defined 'discarded materials,' the legislature has mentioned
what it is not: 'materials that would otherwise be disposed of or discarded [which] are ***
returned to the economic mainstream in the form of raw materials and products.' Thus,
materials are 'discarded' unless they are returned to the economic mainstream." (Emphasis
added.) Alternate Fuels, 215 Ill. 2d at 240, quoting 415 ILCS 5/3.380 (West 2002).

The court concluded that, because the facility processed the materials at issue and returned them as
product into the economic mainstream, the materials were not discarded. Alternate Fuels, 215 Ill.
2d at 240.

Here, there was no evidence presented that the trees had ever been "collected, separated or
processed and returned to the economic mainstream in the form of raw materials or products." 415
ILCS 5/3.380 (West 2004). Jacobsen testified that they showed evidence of decay and did not
change position between the July and October inspections. The trees "were not processed. They
were just laid there to rot." In addition, NISC admitted that trees were present at the site when it
acquired the property 10 years ago and that it had been placing trees on the site ever since. NISC
also admitted that it brought straggler trees from other excavation sites and placed them on the pile
because the trees were not disposable in the usual fashion. NISC explained that, when it is hired to
do an excavation job, NISC hires a tree service company to take the trees out, but "they can't come
out for one tree." Accordingly, we conclude that the uprooted, dead trees on NISC's property fall
within the definition of waste as other discarded material. We reject NISC's argument that, because

Foss testified that the trees have market value as mulch, they cannot be deemed discarded. Whether an item has value has no bearing on whether it is discarded.

We also reject NISC's argument that the trees cannot be deemed waste because they are "totally unlike" the other items specifically mentioned in the definition of waste. NISC's argument is premised on the doctrine of ejusdem generis and this court's decision in City of Lake Forest v. Pollution Control Board, 146 Ill. App. 3d 848 (1986). The doctrine of ejusdem generis, which is used to interpret statutes, provides that, "when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like.' " People v. Davis, 199 Ill. 2d 130, 138 (2002), quoting Farley v. Marion Power Shovel Co., 60 Ill. 2d 432, 436 (1975). According to NISC, because trees are not like the items specifically mentioned in the definition of waste, such as "any garbage, sludge from a waste treatment plant," etc., the trees are not waste. 415 ILCS 5/3.535 (West 2004).

In Lake Forest, applying the doctrine of ejusdem generis, we overturned the Board's classification of leaves as waste. Lake Forest, 146 Ill. App. 3d at 855. There, the city of Lake Forest enacted an ordinance that permitted the burning of leaves. A citizen filed a complaint before the Board, alleging that the city's ordinance violated the Act, which prohibited the burning of "refuse." The issue was whether leaves fell within the Act's definition of waste. We found that, because leaves grow and fall from trees naturally, leaves are not "of the same nature as garbage or sludge which is generated and discarded by people." Lake Forest, 146 Ill. App. 3d at 855. Here, however, unlike in Lake Forest, the trees did not appear in the Roscoe Quarry naturally; rather, NISC uprooted whole trees and hauled them to a pile in the Roscoe Quarry in the course of its excavation business. Put another way, the trees were "generated [in that they were uprooted] and discarded [in that they were

placed in a pile and left to decay] by people." Indeed, at least some portion of the trees had been present for over 10 years. Therefore, we find that, under the facts presented, unlike the leaves in Lake Forest, the uprooted trees here are "of the same nature as garbage or sludge which is generated and discarded by people." Lake Forest, 146 Ill. App. 3d at 855.

Having concluded that the trees qualify as "other discarded material," we need not determine whether they also fall within the definition of "landscape waste" under the Act.

The question now becomes whether the trees are litter. Although the Act itself does not define "litter," both parties have cited the definition found in the Litter Control Act. Section 3(a) of the Litter Control Act defines "litter" as:

> "any discarded, used or unconsumed substance or waste. 'Litter' may include, but is not limited to, any garbage, trash, refuse, debris, rubbish, grass clippings or other lawn or garden waste, newspaper, magazines, glass, metal, plastic or paper containers or other packaging construction material, abandoned vehicle (as defined in the Illinois Vehicle Code), motor vehicle parts, furniture, oil, carcass of a dead animal, any nauseous or offensive matter of any kind, any object likely to injure any person or create a traffic hazard, potentially infectious medical waste as defined in Section 3.360 of the Environmental Protection Act, or anything else of an unsightly or unsanitary nature, which has been discarded, abandoned or otherwise disposed of improperly." 415 ILCS 105/3(a) (West 2004).

Based on our above analysis, we conclude that the trees fall within the definition of litter as "any discarded, used or unconsumed substance or waste." 415 ILCS 105/3(a) (West 2004).

CONCLUSION

Accordingly, for the reasons stated, we affirm.

Affirmed.

O'MALLEY and GROMETER, JJ., concur.